Howard, Appellee, *v.* Reynolds, Appellant, et al., Appellees.

[Cite as Howard v. Reynolds (1972), 30 Ohio St. 2d 214.]

(No. 71-709—Decided May 31, 1972.)

*Messrs. Shumaker, Loop & Kendrick* and *Mr. Robert B. Gosline,* for appellees.

*Messrs. Marshall, Melhorn, Bloch & Belt, Mr. Edward F. Weber* and *Mr. George F. Medill,* for appellant.

HERBERT, J. The sole question presented herein is whether the intangible personal property involved in this case should be distributed according to the law of its deceased owner's domicile or the law of the situs of the property.

It is abundantly clear that "the power to regulate the transmission, administration, and distribution of * * * personal property on the death of the owner rests with the state of its situs * * *." *Frick* v. *Pennsylvania* (1925), 268 U. S. 473, 491. Accordingly, this state, as the situs state, may either transfer the property to the jurisdiction of the domicile state for probate or subject it to its own administration and processes.

Ohio has long followed the rule which establishes the law of domicile as determinative of the succession of personal property. *Swearingen* v. *Morris* (1863), 14 Ohio St. 424. See, also, *McCune* v. *House* (1837), 8 Ohio 144, 145; *Lozier* v. *Lozier* (1919), 99 Ohio St. 254, 124 N. E. 167; *Anderson* v. *Durr* (1919), 100 Ohio St. 251, 126 N. E. 57; *Barrett* v. *Delmore* (1944), 143 Ohio St. 203, 54 N. E. 2d 789; *In re Estate of Gould* (1956), 140 N. E. 2d 793. In so doing, we have adhered to the law which prevails in the majority of jurisdictions concerning intangible, movable personalty. The rationale behind such widespread policy is both sound and viable.

For the "protection of the justified expectations of the parties, certainty, predictability and uniformity of result * * * it is desirable that insofar as possible an estate should be treated as a unit and, to this end, that questions of intestate succession to movables should be governed by a single law. This is the law * * * where the decedent was domiciled at the time of his death." Restatement 2d, Conflict of Laws, Section 260. See, also, Goodrich, Conflict of Laws (4 Ed.), 324, Section 165.

In the instant case, the Court of Appeals acknowledged that any departure from that rule could be made only "for the most persuasive reasons," but held that such reasons did exist.[1] However, our review of the case law, stat-

---

[1] The majority opinion in the Court of Appeals delineates those reasons as follows: "1) the state of Ohio has the sole or at least the greatly predominate interest in the application of its intestacy laws to the property of the decedent; 2) the state of Ohio has all the governmental interests in how the intestate property is to be distributed in that the property has accumulated here, the greater number of heirs live in Ohio and none of the heirs live in Vermont; all or the greater portion of the property involved will be distributed to Ohio heirs; 3) the court should apply its own local law unless there is a good reason for not doing so; 4) the application of the local law would be easy and convenient, simplifying the judicial task; 5) by applying the intestate law of succession of the forum, which provides for representation among next of kin, the better rule of law would be followed * * *; and further finding that the situs of the personal property herein was always actually in Ohio by reason of the guardianship, the nature of the property, and the control exercised by the Lucas County Probate Court, and by reason of trusts prior thereto, and that the decedent during his lifetime had no power to remove the same from the state of Ohio; and further finding the common law principle that intestate succession to personal property is determined by the law of the decedent's domicile is a fiction or tool of the law * * * and is, like any common law principle, subject to expanded application or to limitation and restriction depending upon the facts and circumstances in each case * * *."

The majority opinion also contains a cf. citation of Fox v. Morrison Motor Freight (1971), 25 Ohio St. 2d 193, 267 N. E. 2d 405, thereby implying a suggestion that the "contacts" theory of some recent decisions involving lex loci delicti might also be applied in "choices of law" problems arising in cases such as the one at bar. To this point, attention is directed to the concurring opinion of Justice Leach in Fox, which was concurred in by three other members of the court.

utes and commentaries regarding the rationale for the domiciliary rule convinces us that the reasons advanced do not warrant its being disregarded. The thrust of the doctrine emanates from a need for settled, dependable uniformity in what would otherwise be a vexatious and chaotic quagmire of uncertainty.

"* * * The principle is founded in an enlarged policy, growing out of the transitory nature of personal property, and the general convenience of nations. As remarked by Judge Story (Confl. of Laws, Sec. 379): 'If the law *rei sitae* were generally to prevail in regard to movables, it would be utterly impossible for the owner, in many cases, to know in what manner to dispose of them during his life, or to distribute them at his death; not only from the uncertainty of their situation in the transit to and from different places, but from the impracticability of knowing, with minute accuracy, the law of transfers *inter vivos*, of testamentary dispositions and successions in the different countries in which they might happen to be.' " *Swearingen* v. *Morris, supra* (14 Ohio St. 424), at 428.[2] If the hypostasis of Judge Story's conclusions was efficacious when originally employed, *a fortiori* it deserves great weight today.

There is a general exception to the rule. The law of the domicile will not be applied if to do so would bring about a result contrary to the public policy of the state of situs. *In re Estate of Menschefrend* (1960), 8 N. Y. 2d 1093, 170 N. E. 2d 902; 2 Beale, Conflict of Laws, Section 300.1 *et seq*. Thus, for instance, "* * * no state is under obligation

---

[2] In his dissenting opinion below, Potter, P. J., perspicaciously observed: "* * * I find that the rule of *mobilia sequuunter personam* as it applies to intestate succession is followed in most states * * * and in the state of Ohio to facilitate the orderly administration of estates. The rule is also recognized and approved by the enactment of the following statutes of the state of Ohio: R. C. 2129.23, R. C. 5731.34, and R. C. 2111.38, that the rule is based on sound policy reasons, is not a fiction, and is applicable to the facts of this case * * * the facts that the assets were held by a resident guardian or a non-resident ward in view of R. C. 2111.38 is not persuasive in the determination of the situs of intangible personal property."

to permit the personal estate of a deceased debtor to be withdrawn until the claims of his creditors, resident in the state where the property is found, have been first satisfied." *Swearingen* v. *Morris, supra*, at 429. Other examples, equally *de hors* the facts at bar, could be a state's claim for taxes or an order for payment of costs in the situs court. But the factual contentions advanced by the appellees and relied upon by the court below do not form any recognizable framework of "public policy," as that term has been applied in cases of this nature.

Appellees also contend that the 1932 revision of the Ohio Probate Code (Chapter 2105) abrogated the law of *Swearingen* v. *Morris, supra*. Both the majority and dissenting opinions below held otherwise, and a reading of the relevant General Code sections which preceded the revision plainly supports that conclusion. (G. C. 8573, 8574, 8577 and 8578.) We are satisfied that the General Assembly did not intend to enter the arena of conflicts of law by the enactment of any of the sections included in such revision.

Accordingly, the judgment of the Court of Appeals is reversed and the cause remanded to the Court of Common Pleas, Probate Division, for further proceedings.

*Judgment reversed.*

O'Neill, C. J., Schneider, Stern, Leach and Brown, JJ., concur.

Corrigan, J., dissents.