**REIF, Appellee,**

**v.**

**REIF, Exr., et al., Appellants.**

[Cite as *Reif v. Reif* (1993), 86 Ohio App.3d 804.]

Court of Appeals of Ohio,
Montgomery County.

No. 13568.

Decided March 23, 1993.

*Mattison C. Painter* for appellee.

*Thomas G. Kramer,* for appellants.

WOLFF, Judge.

Thomas Reif, executor of the estate of Clifford Reif and co-trustee, and Ronald Reif, co-trustee, appeal from a summary judgment entered by the Montgomery County Probate Court in favor of Betty Joan Reif, surviving spouse of Clifford Reif.

Clifford Reif died testate on April 27, 1991 in Montgomery County, Ohio. Prior to his death, Clifford and Betty Reif (the "Reifs") and David and Patricia Craig (the "Craigs") had been owners of a parcel of real estate located in Tennessee. Neither the Reifs nor the Craigs were residents of Tennessee. The Reifs resided in Ohio and the Craigs resided in Florida. The Reifs and the Craigs acquired the property in 1978. The deed conveying the real estate granted "unto Dave J. Craig and his wife, Patricia G. Craig, a ½ undivided

interest, and as tenants by the entirety * * * and unto Clifford H. Reif and wife, Betty Joan Reif, a ½ interest as tenants by the entirety, the property a subject matter of this deed, and so as to create a tenancy in common as between the two ½ undivided interests belonging unto the separate marital parties * * *."

On April 5, 1991, the Reifs and the Craigs sold the property to Roger and Marilyn Hall in exchange for a promissory note for $85,000. The Halls were residents of North Carolina. The promissory note was payable to the order of "Dave J. Craig and wife, Patricia G. Craig and Clifford H. Reif and wife, Betty Joan Reif." Clifford Reif died three weeks after the property was sold.

When Clifford Reif's will was probated, his twenty-five-percent interest in the proceeds from the sale of the Tennessee real estate was included in the inventory of the estate. On September 12, 1991, Betty Reif sought a declaratory judgment that Clifford's twenty-five-percent interest in the proceeds passed to her by operation of law because she and her husband had held their interest in the property as tenants by the entireties. Therefore, she claimed that his share automatically passed to her upon his death.

Thomas and Ronald Reif filed a counterclaim seeking the court's declaration that the interest in the proceeds was an asset of the estate. Both sides moved for summary judgment. The probate court sustained Betty Reif's motion, and overruled that of Thomas and Ronald Reif. Thomas and Ronald Reif appeal, raising a single assignment of error:

"The trial court erred as a matter of law in overruling the motion for summary judgment filed by appellants and in sustaining the cross-motion for summary judgment filed by appellee."

This appeal presents a choice-of-law issue. We must determine whether the disposition of the proceeds is governed by Tennessee law or by Ohio law. Betty Reif argues that Tennessee law controls. Under Tennessee law, if real estate is held by the entireties, the tenancy continues in the proceeds from the sale of the real estate. See *Burt v. Edmonds* (1970), 224 Tenn. 403, 456 S.W.2d 342. Thomas and Ronald Reif argue that the proceeds constituted personal property which could not be held by the entireties. See *Howard v. Reynolds* (1972), 30 Ohio St.2d 214, 59 O.O.2d 228, 283 N.E.2d 629, syllabus.

The Restatement of the Law 2d, Conflicts of Law, classifies property according to whether it is "movable" or "immovable." See Restatement of the Law 2d, Conflicts of Law (1971) 62–65, Introductory Note. "Immovables" refers to real property and "movables" refers to all things, tangible or intangible, that are not immovables. *Id.* Intangibles can be divided into two categories: those which are embodied in a document, such as a promissory note, and those which lack physical substance, such as informal contracts or debts. *Id.* Thus, property, for

conflicts purposes, is classified in this manner rather than as "personal" and "real." Sedler, Across State Lines: Applying the Conflict of Laws to Your Practice (1989) 86, fn. 34. Aside from the differences in nomenclature, these categories correspond to the usual notions of realty and personalty. *Id.*

The issue of the assignability of an intangible, such as a promissory note, is generally determined by the law of the state that is most significantly related to the original transaction and the parties. Scoles & Hay, Conflict of Laws (1984) 759, Section 19.28. Arguably, Tennessee law would apply if assignability were the issue. There is, however, a separate body of rules that governs succession to property interests.

Succession to property, whether it is movable or immovable, has traditionally been determined according to a "universal rule." Sedler, *supra.* Under this rule:

"[A]ll matters relating to succession of movable property are governed by the law of the decedent's domicile at the time of death, while all matters relating to succession of immovable property are governed by the law of the situs of the property." *Id.;* Restatement of the Law 2d, Conflicts of Law (1971), Sections 239, 263.

In the case of the testamentary disposition of movables, the rationale for the application of the law of the domicile rests on the "presumed intention or preference of the testator for the application of the law of his domicile. This is on the assumption that the domicile represents the legal system with which he is most familiar." Scoles & Hay, *supra,* at 770, Section 20.3.

This rationale provides a rule of convenience which recognizes the desirability of having a person's estate treated as one unit under a commonly recognized law, no matter how widely the property may be scattered. *Id.* at 773, Section 20.4.

■ This appeal concerns the testate succession to a movable, *i.e.,* the proceeds from the sale of the Tennessee property. Accordingly, the above stated principles of conflicts of law require the application of the law of the state of the decedent's domicile, *i.e.,* Ohio. Thus, we consider how Ohio law would treat the proceeds of a sale of Tennessee real estate that had been held as a tenancy by the entireties.

Ohio has legislatively abolished tenancy by the entireties in real property and replaced it with survivorship tenancy. R.C. 5302.20. This legislation became effective April 4, 1985 and grandfathered tenancies by the entireties that were in effect prior to the effective date. R.C. 5302.21. R.C. 5302.20, which sets forth the requirements to create a survivorship tenancy, provides that a deed or will

creating a survivorship tenancy must include language evidencing a clear intent to create this type of tenancy. R.C. 5302.17 sets out a form of "survivorship deed," which contains the following example of language sufficient to create a survivorship tenancy: "for their joint lives, remainder to the survivor of them." In the absence of words of survivorship, property owned by two or more persons is held as a tenancy in common. R.C. 5302.19.

In this case, the Tennessee deed was drawn and delivered to the Reifs and Craigs in 1978. The deed expressly used entireties language. Arguably, this would have been sufficient under Ohio law to have created a tenancy by the entireties entitled to grandfathering because, by definition, a tenancy by the entireties embodies survivorship rights. Because the deed was executed prior to the effective date of R.C. 5302.21, the tenancy by the entireties created in the deed could have been preserved, and would have continued in the proceeds from the sale of the Tennessee real estate, if Ohio, like Tennessee, recognizes the continuation of a tenancy by the entireties in proceeds from the sale of entireties property.

Generally, a tenancy by the entireties may exist only in realty. Thompson on Real Property (1979) 92, Section 1788. However, there is some authority to the effect that a tenancy by the entireties may exist in personalty, if such personalty is the proceeds of realty held by the entireties. See *Hewitt v. Biege* (1958), 183 Kan. 352, 327 P.2d 872; *Ronan v. Ronan* (1959), 339 Mass. 460, 159 N.E.2d 653; *Lappo v. Negus* (1961), 362 Mich. 242, 106 N.W.2d 765; *Burt v. Edmonds, supra.*

Other jurisdictions take a contrary view, holding that such proceeds are personalty and thus can only be held in common. See *Mojeski v. Siegmann* (1976), 87 N.Y.Misc.2d 690, 386 N.Y.S.2d 609; *Wilson v. Ervin* (1947), 227 N.C. 396, 42 S.E.2d 468; *Panushka v. Panushka* (1960), 221 Ore. 145, 349 P.2d 450; *Fogelman v. Shively* (1892), 4 Ind.App. 197, 30 N.E. 909.

Ohio courts have not, to our knowledge, considered the issue of how proceeds from the sale of entireties property are treated. R.C. Chapter 5302 is silent on the treatment of proceeds from the sale of entireties property. However, given that Ohio has abolished tenancy by the entireties, we choose to adopt the approach that a tenancy by the entireties does not continue in the proceeds of a sale of entireties property. This approach is consistent with the current state of Ohio law, which does not recognize such tenancies in real property, except as provided in R.C. 5302.21. Moreover, we find this approach to be consistent with the overall scheme of the Ohio Revised Code. R.C. Chapter 5302 pertains only to real property. The Revised Code is otherwise silent on the question. We

conclude from this that a survivorship tenancy, or a grandfathered tenancy by the entireties, may only exist in real property.

■ Accordingly, we conclude that proceeds from the sale of entireties property cannot be held by the entireties. Therefore, even if the entireties deed was preserved by the grandfathering provision of R.C. 5302.21, the entireties tenancy would not continue in the proceeds. Therefore, unless the promissory note contained express language of survivorship, the proceeds could not be held as survivorship property. The promissory note was payable to the order of "Dave J. Craig and wife, Patricia G. Craig and Clifford H. Reif and wife, Betty Joan Reif." The mere designation of Betty Reif as the wife of Clifford Reif was insufficient, as a matter of Ohio law, to create a survivorship tenancy in the promissory note. The lack of express words of survivorship prevented the creation of a survivorship tenancy.

■ . Because there were no documents, effective at the time of Clifford Reif's death, that created a survivorship tenancy in the proceeds, the probate court erred in concluding that Betty Reif was entitled to receive Clifford Reif's twenty-five-percent interest in the proceeds simply because she was his surviving spouse. Rather, the interest, as a matter of law, should have been included as an asset of the estate.

The assignment is sustained.

The judgment of the probate court will be reversed. The cause will be remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GRADY, P.J., and FAIN, J., concur.