OPINION
Ralph Kinder, Jr., appeals the judgment and order of the probate court of Defiance County excluding him as a legal heir of Ralph Kinder, Sr.
From the fall of 1956 through the fall of 1963 appellant's mother Nancy Miller lived out of wedlock with the decedent, Ralph Kinder, Sr., in Wayne County, Michigan. The decedent's divorce from his wife (the mother of appellee Regina Plyler) became final on January 15, 1957, and the decedent and Nancy Miller held themselves out as husband and wife for a period of several years.[1] During that period, on September 1, 1960, appellant Ralph Kinder, Jr. was born. The decedent is listed as "father" on appellant's birth certificate. Nancy Miller, the decedent and appellant lived together as a family for nearly three years. However, by the fall of 1963 the decedent had apparently moved out, and Ms. Miller filed a paternity complaint in the Michigan's Wayne County Circuit Court alleging that the decedent was appellant's biological father. However, in accordance with the Michigan law of that time, the parties entered into a settlement whereby the decedent would make payments to Ms. Miller for the support of appellant without legally acknowledging his paternity of appellant. The settlement was approved by the Wayne County Circuit Court, which entered a decision memorializing the agreement between the parties. The decision expressly stated that there was no finding of "filiation."
Following the filing of the settlement, the decedent did in fact make periodic payments for the benefit of appellant. However, the decedent had no further contact with appellant, and there were no subsequent legal proceedings to establish the decedent's legal paternity of appellant. The decedent continued to reside in Michigan until the early 1990's, at which point he moved to Defiance County, Ohio. Appellant has always resided and continues to reside in Michigan.
In the fall of 1996, appellee Regina Plyler (decedent's legitimate daughter) applied to the Court of Common Pleas of Defiance County for guardianship over the decedent. The probate court granted appellee temporary guardianship of the decedent, but the action was dismissed when he agreed to move to Alabama to live with appellee. The decedent Ralph Kinder, Sr. subsequently died intestate in Alabama on March 7, 1997. His estate apparently consists primarily of real property located in Defiance County, Ohio.
On March 12, 1997, appellant Ralph Kinder, Jr. filed an application in the Common Pleas Court of Defiance County to be named the administrator of the decedent's estate. The probate court appointed appellant administrator, but appellee subsequently filed a motion to have appellant removed, arguing that because a parent/child relationship was never legally established between decedent and appellant, that appellant "lack[ed] standing to assert any rights, by or on behalf of, Ralph Kinder, Sr." The trial court apparently agreed with this assertion, and proceeded to remove appellant as administrator and declare that appellee Regina Plyler was the decedent's sole heir at law. The court announced its decision at a hearing on the matter on May 5, 1997, but did not journalize that judgment until June 4, 1997.
However, on June 3, 1997, appellant obtained an order from the State of Michigan, Wayne County Circuit Court, clarifying his rights and the effect of that court's 1963 decision. The Michigan court's order stated:
 Now, therefore, it is hereby confirmed that this Court's prior Order entered on November 15, 1963 only addressed the remedies available under the Paternity Act pertaining to child support for a child born out of wedlock. * * * [s]aid Order entered November 15, 1963 does not affect the issue of inheritance and this Court declares that there is evidence that Ralph Le Roy Kinder, Jr. is the son of the Defendant Ralph Le Roy Kinder, Sr. (now deceased), pursuant to the prima facia evidence of the birth certificate and pursuant to the stipulated Order regarding child support and pursuant to MCL 700.111(4)(c) because Defendant paid support for eighteen (18) years entitling Ralph Le Roy Kinder Jr., to inherit in accordance with the statute in such case made and provided.
Although Michigan law generally precludes illegitimate children (children whose paternity has not been legally established)[2]
from inheriting a share of their intestate fathers' estates, the Michigan court concluded that appellant had heirship rights based upon a Michigan intestacy statute that provides for illegitimate children to inherit under certain circumstances.
 If a child is born out of wedlock or if a child is born or conceived during a marriage but is not the issue of that marriage, a man is considered to be the natural father of that child for all purposes of intestate succession if any of the following occurs:
* * * *
 The man and the child have borne a mutually acknowledged relationship of parent and child that began before the child became age 18 and continued until terminated by the death of the other.
Mich. Comp. Laws. § 700.111(4)(c). The statute does not purport to legitimate affected children for all purposes, but instead creates a right for illegitimate children who have a "mutually acknowledged" relationship with a parent to inherit as would a legitimated child.
The Michigan court's 1997 order held that the 1963 settlement "only addressed the remedies available under the Paternity Act pertaining to child support" and did not "affect the issue of inheritance." The 1997 order noted that there was "evidence that Ralph Le Roy Kinder, Jr. is the son of the Defendant Ralph Le Roy Kinder, Sr." but did not make an express finding of paternity. Instead, it held that the "mutual acknowledgement" standard entitled "Ralph Le Roy Kinder Jr., to inherit in accordance with the statute in such case made and provided." (emphasis added).
Based on the Michigan court's decision, appellant filed a motion for reconsideration in the trial court.[3] Despite the Michigan court's decision, the trial court confirmed its prior order, and applying Ohio statutory and case law determined that appellant was not an heir of the decedent.
 Ralph L. Kinder, Sr. died intestate, and therefore the laws of intestate succession specifically apply. Ralph L. Kinder, Jr. may be able to prove that he is the natural son of Ralph L. Kinder, Sr., deceased and there is some evidence that he will have the support of the distant family of Ralph L. Kinder, Sr. Indeed, Michigan has determined the birth certificate to be Prima Facia evidence of paternity, however, due to the statutes of limitations on paternity actions, which specifically apply to an heirship proceeding, there is no legal way to accomplish that proof. And this Court believes that the statute of limitations on paternity actions was specifically imposed for that purpose.
Appellant took an appeal to this court, and in In Re Estate of Kinder (June 12, 1998), Defiance App. Nos. 4-97-22 and 4-98-01, unreported, 1998 WL 317597, we reversed. We held that the trial court had erred by summarily determining that appellant was not entitled to inherit without holding a full hearing on the issue pursuant to R.C. Chapter 2123. We also noted that "[t]he question of whether Ralph Kinder, Jr. is an heir of Ralph Kinder, Sr. depends upon whether the parent/child relationship has been established pursuant to Michigan paternity law within the relevant statutory time limitations," and determined that the trial court erred by applying Ohio law to hold that the statute of limitations precluded a judgment on the issue. Id. at *4-5. We remanded the case for a full hearing on the issue of whether paternity had been established under Michigan law, or in other words, whether appellant had been legitimated.
A full hearing was held on October 20, 1998, at which the court "did receive certain evidence stipulated by the parties, and testimony presented by both parties, and additional witnesses on their behalf." On November 12, 1998, the court issued its decision. The court apparently determined that there had not yet been a legal finding of paternity, and therefore that "[t]he sole question in this heirship proceeding is whether or not the actions of the decedent in the period 1956 through 1963 were sufficient to establish the child Ralph L. Kinder, Jr. as an heir-at-law of the decedent." The court held that appellant was never legitimated under Michigan law during the relevant period, and therefore determined appellant had no inheritance rights under Ohio law, which controls the intestate succession of the decedent's estate.
 The split between the two States, and the import of the Michigan proceedings, can be simply stated as follows. The Michigan statute under which Ralph L. Kinder, Jr. relies is sufficient to establish him as an heir-at-law of Ralph L. Kinder, Sr. in the State of Michigan. But does not establish paternity [sic]. * * * * [A] finding by one State that a certain class of persons by meeting a statutory condition are an heir-at-law, as opposed to a legitimate child, are not binding on Sister States, who do not have the same or similar provisions for the establishment of an heir-at-law. (emphasis in original).
Appellant now asserts three assignments of error with the probate court's judgment.
 The trial court committed error in applying Ohio, rather than Michigan law, to determine if Appellant, Ralph L. Kinder, Jr. was legitimated by the acts of Ralph L. Kinder, Sr.
 The trial courts [sic] erred as a matter of law in determining that while Ralph L. Kinder, Jr. is in fact natural child [sic] of the intestate decedent, he cannot inherit as an heir, as he is not the legitimate child. Such a distinction, as applied to the facts of this case has no rational basis, and denied the Appellant his right to Equal Protection of the Law under the U.S. and Ohio Constitution [sic].
 The trial [sic] court ruling that the relationship of parent and child was not established between Ralph L. Kinder, Jr. and Ralph L. Kinder, Sr. is against the manifest weight of the evidence.
We will begin by addressing appellant's third assignment of error. At the outset, we observe that while the briefs of both parties contain contrary descriptions of the evidence presented at the hearing below, neither party has filed a transcript with the appellate record in this case.[4] It also appears that appellant's third assignment of error argues that the trial court's judgment is against the manifest weight of the evidence. Appellate R. 9(B) provides, in relevant part:
 If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion.
A transcript of all evidence relevant to challenged findings or conclusions is necessary when the appellant contends they are contrary to the weight of the evidence. See, e.g., Tyrrell v. Investment Assoc., Inc. (1984), 16 Ohio App.3d 47, 49-50. Here, our review of the scant evidence provided on appeal tends to support the trial court's conclusion that a parent/child relationship was never legally established between appellant and the decedent. Moreover, even if the evidence contained in a partial record does not support the trial court's conclusion, so long as it does not affirmatively appear that omitted evidence was irrelevant to that conclusion it will be presumed that the omitted evidence supports the trial court's conclusion. See Wargo v. Buck (1997), 123 Ohio App.3d 110, 117. Accordingly, defendant's third assignment of error is overruled.
Appellant's second assignment of error argues that the trial court's decision was based on the quasi-suspect classification of legitimacy, and appellant claims that the court's judgment was in violation of the Equal Protection Clauses of both the U.S. and the Ohio Constitutions. In Trimble v. Gordon (1977), 430 U.S. 762, the U.S. Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment required states to have a procedure by which illegitimate children could inherit from their fathers. However, in Lalli v. Lalli (1978), 439 U.S. 259, the Court determined that Equal Protection Clause was satisfied by a requirement that in order for an illegitimate child to inherit, a court of competent jurisdiction must enter an order of filiation during the lifetime of the father, so long as the child has the ability to initiate paternity proceedings.
In reviewing this assignment, we need only note that in White v. Randolph (1979), 59 Ohio St.2d 6, the Ohio Supreme Court held that the Ohio intestacy statutes creating a classification based on legitimacy provided adequate protections to children born out of wedlock, and did not violate the rights of illegitimate children to equal protection of the laws. Moreover, in In Re Estate of Jones (1994), 207 Mich. App. 544, 552, the Court of Appeals of Michigan held that the Michigan intestacy statutes, which also contain a classification based on legitimacy, did not violate the Equal Protection Clause. See also McFetridge v. Chiado (1981), 116 Mich. App. 528. All of these decisions held that the laws at issue provided sufficient opportunities for children born out of wedlock to establish paternity such that they met the requirements of equal protection.
The trial court's decision on this issue was based largely on the understanding that appellant made no attempt to obtain a judgment establishing the decedent's paternity of him. The trial court essentially held that appellant's failure to initiate paternity proceedings in Michigan within the statute of limitations gave rise to an estoppel by laches. In view of the foregoing Michigan and Ohio court decisions, we cannot say that this judgment was constitutionally infirm. Appellant's second assignment of error is also overruled.
Appellant's first assignment of error argues that the trial court erred by applying Ohio law on the issue of legitimacy. In our previous decision, we observed that a determination of paternity under Michigan law would be binding on Ohio courts:
 Appellant next contends that if the trial court had properly applied Michigan paternity law, it would have found that the parent/child relationship had been established and the state of Ohio would have been required to give full faith and credit to said determination. We are not in a position to conclude that paternity had been established under Michigan law as this court cannot conduct a hearing on the matter, however, we agree with Appellant that if paternity has been established under Michigan law, Ohio must give deference to said finding.
In Re Estate of Kinder, supra at *4. On remand, we directed the trial court to apply Michigan law to determine whether appellant had been legitimated or paternity had otherwise been legally established. The Michigan court's 1997 order and Mich. Comp. Laws. § 700.111(4)(c) show that appellant has established a prima facie case for heirship rights under Michigan law, and in construing the Michigan court's order the trial court correctly recognized the Michigan court had held that there was "mutual acknowledgment" allowing appellant to inherit under Michigan law.
 [The Michigan court's] Order of June 3Brd confirms that the [Michigan] Court's prior Order only addressed the remedies available under the Paternity Act pertaining to child support, but did not affect the issue of inheritance. I believe that is true in Michigan. * * * Mr. Kinder's actions were mutual acknowledgment, and that it [sic] continued because of his subsequent payment and therefore met the requirements of a mutual acknowledgment under Michigan Law.
 Despite this conclusion, the court (purportedly applying Michigan law) next held that appellant had not been legitimated.
 [T]he actions of the deceased in signing Nancy Miller into the hospital as his wife, and in signing the birth certificate, and the fact that the application was issued showing the deceased to be the father of Ralph Leroy Kinder, Jr., are prima facie evidence of paternity. However, that prima facie evidence was not confirmed in the subsequent paternity case of 1963, that order stating "without finding filiation", therefore the child is not a legitimate child.
We take this to mean that the trial court determined that despite its belief that paternity had been established as a factual matter, that the Michigan court's order was not a judgment legitimating appellant but instead was a merely an advisory statement of how Michigan's law of intestate succession would resolve the case. In accordance with that understanding, the court considered the other evidence presented at the hearing and concluded that appellant had never been legitimated, that decedent's paternity of appellant had not been and could not be legally established, and that therefore appellant had no heirship rights under Ohio law. Appellant argues that the court actually applied Ohio law as to legitimacy, and urges us to reverse on that basis.
The rule that governs appellant's status relationship with the decedent was announced by the Ohio Supreme Court in Howells v. Limbeck (1961), 172 Ohio St. 297.
 Where the ground for the acquisition of the status of legitimacy is the act of the father in acknowledging the child as his own, the question whether such act will have the effect of legitimating the child will be determined by the law of the domicile of the father at the time of the performance of the act, to the exclusion of any other law.
Id. at the first paragraph of the syllabus. In our previous review of this case, we applied this rule to conclude that Michigan law controlled the issue of whether appellant had been legitimated. See In Re Estate of Kinder, 1998 WL 317597 at *4-5.
Having reviewed the trial court's judgment entry, it is our conclusion that the court correctly observed that the "mutual acknowledgement" statute does not establish paternity for all purposes, but only for purposes of intestate succession under Michigan law. However, it is well established that in such conflict situations, Michigan law cannot control the intestate succession of the decedent's estate.
 The descent and distribution of an intestate estate is governed by the law of the decedent's domicile in which such estate is also located. The personal status of a person, with respect to succession, is to be ascertained by the law of the domicile which creates such status; but the right of such person to share in the descent and distribution is generally governed by the local law of inheritance.
* * * *
 The law of the place where the property is situated generally governs the descent of realty and other immovable property, irrespective of the domicile of the deceased owner.
* * * *
 The lex domicillii of the owner of personal or movable property, at the time of his death, governs the succession to, and the distribution of, such property, without regard to the location of the property or the place of the death, except in so far as it conflicts with the lex loci rei sitae.
26A Corpus Juris Secundum (1956) 520-26, Descent and Distribution, Sections 3, 4, 5. See also DeVaughn v. Hutchinson (1897),165 U.S. 566; Howard v. Reynolds (1972), 30 Ohio St.2d 214, syllabus; 16 Ohio Jurisprudence 3d (1979), Conflict of Laws, Section 32.
Here, while there is some possible dispute between the parties whether the decedent was domiciled in Ohio at the time of his death,[5] it is undisputed that he was not domiciled in Michigan, and no real property of his estate is situated in Michigan. Accordingly, the Michigan "mutual acknowledgment" statute is inapplicable in this case. Unfortunately, the trial court did not address any other issues of Michigan law in its judgment entry, but instead quoted Ohio statutes regarding paternity and legitimacy, in direct contravention of our previous decision in this case. See In Re Estate of Kinder, 1998 WL 317597 at *4-5. However, because the parties have failed to provide us with a transcript, there is nothing in the record which would permit us to review this case on any basis other than as a matter of intestate succession under Ohio law. Accordingly, we must overrule appellant's first assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
BRYANT, P.J., and WALTERS, J., concur.
[1] The state of Michigan statutorily abolished the doctrine of common-law marriage on January 1, 1957.
[2] In deciding this case, it is crucial that we carefully distinguish three separate but related concepts: paternity, legitimation, and heirship.
Black's Law Dictionary defines "paternity" as "[t]he state or condition of a father; the relationship of a father." Black's Law Dictionary 1126. It is therefore the factual, biological relationship between a father and child.
By contrast, "legitimation" is defined as "[t]he making legitimate or lawful that which was not originally so; especially the statutory procedure of legalizing (legitimating) the status of an illegitimate child. Such is usually necessary to assure inheritance rights to the child." Id. at 901. An "illegitimate child" is defined as a "[c]hild who is born at a time when his parents, though alive, are not married to each other." Black's Law Dictionary 747. Legitimation is thus one legal process by which paternity is established.
Finally, "heirship" is defined as "[t]he quality or condition of being an heir, or the relation between the heir and his ancestor. It is a legal right, regulated by law, to be enjoyed subject to the provisions of the statute." Id. at 724.
The three concepts are often treated as one, but are distinct. The best way to distinguish amongst them is to note that paternity is a factual statement of blood relation, legitimation is a type of legal judgment confirming paternity, and heirship is the incidental right which generally accompanies such a judgment.
[3] Although it is styled as a "motion for reconsideration," the trial court treated the filing as a Civ.R. 60(B) motion for relief from a prior judgment.
[4] The parties did file a cursory agreed statement in lieu of a transcript, in accordance with App.R. 9(D). To the extent that the arguments of the parties draw on evidence beyond the agreed statement of facts, we must disregard them.
[5] On April 22, 1997, appellee filed a motion to dismiss and argued in part that the decedent Ralph Kinder Sr. resided in Alabama at the time of his death. Appellant's response argued that despite his residence in Alabama that the decedent had maintained his domicile in Defiance County, Ohio. While it does not appear that the trial court ever ruled on this issue, for present purposes it is sufficient for us to observe that no party has ever argued that the decedent was domiciled in Michigan at the time of his death.