**[Cite as *In re Estate of Gaskill*, 2019-Ohio-4936.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

**IN RE:**

| | |
|---|---|
| **ESTATE OF** | **CASE NO. 1-19-15** |
| **FRANK BENJAMIN GASKILL,** | |
| **DECEASED** | |
| | **O P I N I O N** |
| **[RITA WILLIAMS ET AL. - APPELLANTS]** | |

**Appeal from Allen County Common Pleas Court**
**Probate Division**
**Trial Court No. 2017 ES 432**

**Judgment Affirmed**

**Date of Decision: December 2, 2019**

**APPEARANCES:**

*John C. Huffman* **for Appellants**

Case No. 1-19-15

**PRESTON, J.**

{¶1} Appellants, Rita Williams ("Williams") and Harry C. Crisp ("Crisp"), in his individual capacity, appeal the March 4, 2019 judgment of the Allen County Court of Common Pleas, Probate Division. For the reasons that follow, we affirm.

{¶2} Frank B. Gaskill ("Gaskill"), Williams and Crisp's stepfather, died testate on May 27, 2017. (*See* Doc. No. 2). On November 3, 2017, Crisp applied to admit Gaskill's will to probate and for authority to administer Gaskill's estate.[1] (Doc. Nos. 2, 4). On November 13, 2017, Gaskill's will was admitted to probate, and Crisp was appointed the executor of Gaskill's estate. (Doc. Nos. 2, 6). As relevant to this case, Gaskill's will provides:

ITEM II

I give, devise and bequeath my entire estate, whether real, personal or mixed, of every kind, nature and description whatsoever, and wheresoever situated, which I may now own or hereafter acquire, or have the right to dispose of at the time of my decease, by power of appointment or otherwise, unto my three step-children, SHARON JOHNSON, RITA WILLIAMS and HARRY C. CRISP, absolutely and in fee simple. If any one of the aforenamed predeceases the

[1] A suggestion of death was filed in this court on November 18, 2019 informing this court that Crisp died on October 13, 2019.

-2-

others, his or her share shall be divided equally by the other two. If

any two of the aforenamed predecease leaving only one, their shares

shall go to the survivor.

(Capitalization sic.) (Doc. No. 2). Although Williams, Crisp, and Sharon Johnson

("Johnson") each survived Gaskill, Johnson subsequently died on March 4, 2018.

(*See* Doc. Nos. 24, 26, 27).

{¶3} On August 24, 2018, Crisp, as executor of Gaskill's estate, filed a

complaint in the trial court requesting a construction of Gaskill's will. (Doc. No.

38). In the complaint, Crisp noted that some of the "legatees and devisees named

in the Will have said that they believe that [Gaskill] intended Item II of the Will to

mean that if one of the three legatees and devisees predeceases the others, his or her

share shall be divided equally by the other two, notwithstanding the fact that the

deceased legatee and devisee survived the testator." (*Id.*). Crisp also maintained

that there was a belief among the beneficiaries of Gaskill's estate that Gaskill

"intended Item II of the Will to mean that if any two of the three legatees and

devisees predecease the other, leaving only one, their shares shall go to the survivor,

notwithstanding the fact that the deceased legatees and devisees survived the

testator." (*Id.*).

{¶4} On October 9, 2018, Williams filed her answer to the complaint. (Doc.

No. 41). On January 9, 2019, Williams filed a "Motion to Construe Will" and a

memorandum in support thereof. (Doc. No. 52). In addition, on January 28, 2019, Williams filed a supplemental memorandum in support of her "Motion to Construe Will." (Doc. No. 53). In her memoranda, Williams argued that Gaskill likely intended that only his stepchildren, and not their heirs or devisees, share in his estate. (Doc. Nos. 52, 53). According to Williams, if the trial court determined that Johnson's interest in Gaskill's estate vested at the time of Gaskill's death, Johnson's heirs or devisees would be entitled to Johnson's share of Gaskill's estate, thus contravening Gaskill's supposed intent. (Doc. Nos. 52, 53). She therefore urged the trial court to conclude that Johnson's interest in Gaskill's estate did not vest prior to her death, which would require Johnson's share to be divided equally between Crisp and herself by operation of the survivorship language in Item II—a result consistent with Gaskill's alleged intent. (Doc. Nos. 52, 53). In addition, Williams argued in the alternative that even if Johnson's interest vested at Gaskill's death, the survivorship language in Item II of the will evidenced Gaskill's intention that Williams, Crisp, and Johnson take title to Gaskill's property concurrently and with rights of survivorship. (Doc. No. 53). She argued that Johnson's heirs or devisees were not entitled to Johnson's share of Gaskill's estate because upon Johnson's death, Johnson's interest in the property passing under Gaskill's will vested proportionately in Crisp and Williams. (*Id.*).

{¶5} A hearing on the complaint was held on January 16, 2019. (*See* Doc. No. 54). On March 4, 2019, the trial court issued its judgment, concluding that "upon the death of Frank B. Gaskill, each of the three beneficiaries set forth in the will received an undivided one third in the estate of Frank B. Gaskill and the subsequent death of Sharon Johnson did not result in extinguishment of the bequest made to her[.]" (*Id.*). The trial court further held that Johnson's "heirs pursuant to her estate should receive her portion of [Gaskill's] estate." (*Id.*).

{¶6} On April 3, 2019, Williams and Crisp filed a notice of appeal. (Doc. No. 55). They raise two assignments of error for our review, which we will address together.

**Assignment of Error No. I**

**The trial court erred by construing the will of Frank Gaskill in a manner that contravened the testator's intent to limit his devise to his step-children.**

**Assignment of Error No. II**

**The trial court erred in finding that the survivorship language in the will of Frank Gaskill did not create a joint tenancy with rights of survivorship.**

{¶7} In their first and second assignments of error, Williams and Crisp argue that the trial court erroneously construed Gaskill's will. In their first assignment of error, Williams and Crisp argue that the trial court erred by determining that Johnson's interest in Gaskill's estate vested at the time of Gaskill's death and that,

consequently, Johnson's heirs or devisees are entitled to Johnson's share of Gaskill's estate. (Appellants' Brief at 3-9). While they acknowledge that the law "favors the vesting of estates at the earliest possible moment," they argue that this principle must yield to Gaskill's supposed intention to include only his stepchildren, and not his stepchildren's heirs or devisees, in his estate plan. (*Id.* at 3, 8-9). In their second assignment of error, Williams and Crisp argue that the trial court should have construed the survivorship language in Item II of the will as expressing Gaskill's intention that Williams, Crisp, and Johnson take title to his property as joint tenants with rights of survivorship. (*Id.* at 10-14). Williams and Crisp argue that because Gaskill's will must be read as giving them rights of survivorship to the property passing under the will, the trial court erred by determining that Johnson's heirs or devisees should receive Johnson's share of Gaskill's estate, rather than determining that Johnson's share vested proportionately in Williams and Crisp at Johnson's death. (*Id.* at 10-14).

{¶8} "It is well settled that the construction of a will is a question of law, and thus, we will apply a de novo standard of review." *In re Estate of Stockmaster*, 3d Dist. Seneca No. 13-10-43, 2011-Ohio-3006, ¶ 13, citing *Woolley v. Woolley*, 190 Ohio App.3d 18, 2010-Ohio-4177, ¶ 17 (3d Dist.), citing *Dunkel v. Hilyard*, 146 Ohio App.3d 414, 418 (4th Dist.), citing *McCulloch v. Yost*, 148 Ohio St. 675, 677 (1947). "[T]he most fundamental tenet for the construction of a will requires that

the court ascertain and carry out, within the bounds of the law, the intent of the testator." *Woolley* at ¶ 17, citing *Domo v. McCarthy*, 66 Ohio St.3d 312, 314 (1993). "Such intention must be ascertained from the words contained in the will." *Stockmaster* at ¶ 13, citing *Oliver v. Bank One, Dayton, N.A.*, 60 Ohio St.3d 32, 34 (1991). The words in a will, ""'if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear(s) from the context that they were used by the testator in some secondary sense.'"" *Polen v. Baker*, 92 Ohio St.3d 563, 565 (2001), quoting *Ohio Natl. Bank of Columbus v. Adair*, 54 Ohio St.2d 26, 30 (1978), quoting *Townsend's Exrs. v. Townsend*, 25 Ohio St. 477 (1874), paragraph three of the syllabus. "All the parts of the will must be construed together, and effect, if possible, given to every word contained in the will." *Bogar v. Baker*, 7th Dist. Mahoning No. 16 MA 0138, 2017-Ohio-7766, ¶ 14, citing *Townsend's Exrs.* at paragraph four of the syllabus.

{¶9} We begin with Williams and Crisp's first assignment of error, in which they contend that the trial court erred by concluding that Johnson's interest in Gaskill's estate vested at the time of Gaskill's death. As Williams and Crisp acknowledge, it is well settled that "'the law strongly favors the immediate vesting of estates.'" *Stevens v. Radey*, 117 Ohio St.3d 65, 2008-Ohio-291, ¶ 11, quoting *Ohio Natl. Bank of Columbus v. Boone*, 139 Ohio St. 361, 370 (1942). "The rights of the beneficiaries become fixed and certain at the death of the testator unless a

contrary intent is manifested." *Id.*, citing *Boone* at paragraph two of the syllabus and *Tax Comm. v. Oswald*, 109 Ohio St. 36, 52 (1923). Therefore, "[u]nless a testator manifests a contrary intent in a will, the preference for the immediate vesting of estates requires interests to be assigned at the testator's death, not held in abeyance until a future uncertain date." *Id.* at syllabus; *Boone* at paragraph two of the syllabus (holding that to prevent the immediate vesting of estates, there must be a "*clearly* expressed intention to postpone the vesting to some future time") (Emphasis added.).

{¶10} After reviewing the entirety of Gaskill's will and giving effect, where possible, to every term in the will, we cannot conclude that Gaskill clearly expressed an intention to postpone the vesting of Johnson's interest in his estate until some later date. There are no references in Gaskill's will to any specific date to which the vesting of Johnson's interest was or is to be postponed. (*See* Doc. No. 2). Furthermore, there is no language in the will explicitly linking the vesting of Johnson's interest in Gaskill's estate to the occurrence of some future event. (*See id.*). Thus, as far as can be ascertained from the plain language of Gaskill's will, Gaskill did not explicitly communicate an intention to delay the vesting of Johnson's interest in his estate.

{¶11} Moreover, in ascertaining a testator's intent, "there are certain well recognized rules of construction and interpretation which are presumptively known

to all testators," including the preference for the *immediate vesting* of estates. *Everhard v. Brown*, 75 Ohio App. 451, 457-458 (9th Dist.1945). *See Summers v. Summers*, 121 Ohio App.3d 263, 268 (4th Dist.1997) ("A will must be read 'with the presumption that the testator was knowledgeable of the law.'"), quoting *Wendell v. AmeriTrust Co., N.A.*, 69 Ohio St.3d 74, 76 (1994). Thus, we presume that Gaskill was aware of the law's preference for early vesting. Considering that Gaskill is charged with knowledge of the law's preference for early vesting, the fact that his will is silent as to the time of the vesting of Johnson's interest suggests that he did not intend to delay vesting. *See Everhard* at 458 ("The intention of a testator may be ascertained from what he has forborne to say as well as from what he has said."). Therefore, we conclude that the trial court correctly determined that Johnson's interest in Gaskill's estate vested at Gaskill's death.

{¶12} Nevertheless, Williams and Crisp argue that there is an "exception subordinating this principle of construction to another prevailing principle in the law of estates, which is the will of the testator." (Appellants' Brief at 5). They speculate that Gaskill's overriding intention was to limit his devise exclusively to his stepchildren, arguing that "[t]he words of survivorship in Item II of the * * * will are the sole manifestation of * * * Gaskill's intent, and those words express the intent that Gaskill's surviving step-children should be those who divide the share of their deceased co-devisee." (*Id.* at 8). Williams and Crisp claim that if Item II of

Gaskill's will "is read as immediately effective at the time of [Gaskill's] death, the likely intent of [Gaskill] to limit his devise to his step-children would be frustrated simply because his will did not account for the death of one of the step-children after the testator's death but before the proceeds of the will had been divided." (*Id.* at 4).

{¶13} Williams and Crisp's argument is without merit. In evaluating Williams and Crisp's argument, one case, *Renner v. Williams*, is particularly instructive. In *Renner*, the Supreme Court of Ohio was tasked with construing a will that contained survivorship language similar to the survivorship language used in Item II of Gaskill's will. There, the testator provided, "In case of the death of either one or more of [three named beneficiaries], the survivor or survivors shall inherit the property bequeathed to them * * *; if more than one survivor, to be divided equally, share and share alike." 71 Ohio St. 340, 356 (1905). The issue in *Renner* was whether the survivorship language "relate[d] to the time of the death of the testator, or to the time of distribution, or to the time of the death of any of the devisees there named[.]" *Id.* at 356-357. The court held that "[w]ords of survivorship in a will prima facie refer to the time of the testator's death, because that is the time at which the property to be divided usually comes into enjoyment." *Id.* at paragraph one of the syllabus. The court noted, however, that "if the time of payment or distribution * * *, or the time of vesting an estate, be postponed in the

will to a time later than the death of the testator, the words of survivorship will relate to such later period." *Id.* Ultimately, the court concluded that because the will did not clearly specify that the survivorship was to take effect later than the testator's death, the "words 'survivor or survivors' * * * mean[t] survivor or survivors at the time of the testator's death." *Id.* at paragraph two of the syllabus. Therefore, the three beneficiaries' interests in the testator's estate "vested immediately on the death of the testator, so that on the death of [two of the beneficiaries] after the death of the testator, their interest in the * * * estate passed by descent to their respective heirs, and not to [the third beneficiary] as survivor." *Id.*

{¶14} As discussed above, Gaskill's will does not evince an intention to postpone the vesting of the interests in his estate or to defer payment or distribution of the interests created thereunder. Consequently, the words of survivorship in Item II refer to the time of Gaskill's death. *Renner* at paragraphs one and two of the syllabus. Because the survivorship language in Item II refers to the time of Gaskill's death, Gaskill's intent to limit his devise to his stepchildren, as expressed through the survivorship language, must also relate to the time of his death. In other words, while the survivorship language in Item II of Gaskill's will may express Gaskill's intention to limit his devise to his stepchildren who survived him at the time of his death, it does not necessarily evidence his intention to cut off the heirs or devisees of his stepchildren who survived him but died before his estate could be fully

distributed. Indeed, nothing in Gaskill's will clearly establishes that Gaskill intended to limit his devise to his stepchildren surviving at the time of the distribution of his estate. Although Williams and Crisp theorize that Gaskill would have intended for them to evenly divide Johnson's share if he had anticipated that Johnson would die before his estate was fully distributed, "'"[c]onjecture is not permitted to supply what the testator has failed to indicate * * *."'" *Demeraski v. Bailey*, 8th Dist. Cuyahoga No. 102304, 2015-Ohio-2162, ¶ 30, quoting *Crane v. Doty's Exrs.*, 1 Ohio St. 279, 284 (1853), quoting 1 Jarman, *Wills*, 315. Moreover, Williams and Crisp's argument does not account for the possibility that Gaskill may have considered that one or more of his stepchildren might survive him but die before his estate was fully distributed and that he consciously chose not to make a special provision for that scenario. Because the will is silent on the issue, this explanation is no less plausible than Williams and Crisp's supposition.

{¶15} In light of the foregoing, we conclude that the trial court did not err by holding that Johnson's interest in Gaskill's estate vested at Gaskill's death. Furthermore, we conclude that Gaskill's will does not demonstrate that Gaskill intended to limit his devise to his stepchildren surviving at the time of the distribution of his estate. As a result, we conclude that Gaskill's will does not bar Johnson's heirs or devisees from receiving Johnson's vested share of Gaskill's estate solely because Johnson died before Gaskill's estate was fully distributed.

Therefore, we conclude that unless Gaskill intended to give Williams, Crisp, and Johnson rights of survivorship in the property passing under the will, the trial court did not err by determining that Johnson's heirs or devisees are entitled to receive her share of Gaskill's estate. *See Renner* at paragraph two of the syllabus. Having so concluded, we now consider whether Gaskill intended to give Williams, Crisp, and Johnson rights of survivorship in his property—the subject of Williams and Crisp's second assignment of error.

{¶16} In their second assignment of error, Williams and Crisp argue that "[i]t is clear from the language of the * * * will that * * * Gaskill intended for his [step]children to own his real property as joint tenants with rights of survivorship because of the words of survivorship included in the will." (Appellants' Brief at 12). They argue that even if Gaskill's "real property actually *did* vest upon his death in equal shares to the three step-children named in the will, it *did* so as a joint tenancy" and that upon Johnson's death, "the survivorship language of the will would have vested the real property in [Williams and Crisp]." (Emphasis sic.) (*Id.* at 13-14).

{¶17} Initially, we note that Williams and Crisp apparently do not argue that Gaskill intended to give rights of survivorship with respect to his personal property. Instead, they argue that the joint tenancy with rights of survivorship supposedly created by Gaskill's will is limited to the real property passing under the will.

However, such a limitation is not supported by the language of Gaskill's will. To the extent that the survivorship language directly modifies Gaskill's devise to Williams, Crisp, and Johnson, the language applies, without qualification, to Gaskill's gift of his "entire estate, whether real, personal or mixed, of every kind, nature and description whatsoever, and wheresoever situated." (Doc. No. 2). There is no indication in Item II or elsewhere in Gaskill's will that Gaskill intended for ownership of his personal property to pass in a different manner than his real property. (*See id.*). Thus, if the survivorship language in Item II of Gaskill's will is read as an expression of Gaskill's intention for Williams, Crisp, and Johnson to take title to his real property as joint tenants with rights of survivorship, this intention should extend to Gaskill's personal property as well. Ohio law recognizes joint ownership with rights of survivorship in certain types of personal property. *See Wright v. Bloom*, 69 Ohio St.3d 596 (1994) (joint and survivorship bank accounts); *In re Hutchison's Estate*, 120 Ohio St. 542 (1929) (joint ownership of stock certificates with rights of survivorship); *Wetli v. Denny*, 6th Dist. Lucas No. L-13-1043, 2014-Ohio-1009, ¶ 8, 10-13 (joint ownership with rights of survivorship in two oil paintings); R.C. 2131.12 (joint ownership with rights of survivorship in motor vehicles, watercraft, or outboard motors). As a result, were we to conclude that Gaskill intended for Williams, Crisp, and Johnson to take title to his real property as joint tenants with rights of survivorship, we would likely be required to

conclude that Gaskill also intended for Williams, Crisp, and Johnson to jointly own his 2000 Lincoln Continental, savings account, 12 shares of stock in the Ford Motor Company, and the rest of his personal property with rights of survivorship. (*See* Doc. No. 23).

{¶18} However, after reviewing the entirety of Gaskill's will, we conclude that Gaskill did not clearly articulate an intention for Williams, Crisp, and Johnson to take title to his real, or for that matter personal, property as joint tenants with rights of survivorship. The common-law joint tenancy with incidental right of survivorship is not recognized in Ohio. *Hutchison* at 550; *In re Estate of Shelton*, 154 Ohio App.3d 188, 2003-Ohio-4593, ¶ 9 (11th Dist.); *Spitz v. Rapport*, 78 Ohio App.3d 330, 333 (8th Dist.1992) ("[T]here is no common-law joint tenancy with right of survivorship in Ohio."); *Huntington Natl. Bank v. Hebeka*, 6th Dist. Lucas No. L-90-318, 1992 WL 173276, *4 (July 24, 1992) ("Ohio had never recognized joint tenancies * * * until the Legislature, in 1972, enacted former R.C. 5302.17."). In early cases, the Supreme Court of Ohio held, for example, that the right of survivorship was "not founded in principles of natural justice, nor in any reasons of policy applicable to our society or institutions," but was instead "adverse to the understandings, habits, and feelings of the people." *Sergeant v. Steinberger*, 2 Ohio 305, 306 (1826); *Wilson v. Fleming*, 13 Ohio 68, 74 (1844) ("We entertain no doubt that such estates, and their concomitant incident, the right of survivorship, are utterly

inconsistent with the genius and spirit of our laws."). Thus, when confronted with wills that could have been plausibly interpreted as expressing intentions to create joint tenancies, the Supreme Court of Ohio consistently determined that such wills created tenancies in common rather than joint tenancies. *E.g.*, *Penn v. Cox*, 16 Ohio 30, 30-32 (1847); *Sergeant* at 305-307. *See* 19 Ohio Jurisprudence 3d, Cotenancy and Partition, Section 9 (2019) ("American courts * * * are inclined to import an intention in favor of a tenancy in common whenever the expressions in a conveyance or the acts of the parties permit such a construction. * * * Accordingly, in Ohio, wherever * * * undivided parts of real property are acquired by two or more persons, with right of possession at the same time, such persons are tenants in common," unless the "circumstances * * * expressly * * * call for some other form of cotenancy."), quoting Kuehnle, Levey & Bower, Ohio Real Estate Law, Section 6:4 (3d Ed.).

{¶19} Nevertheless, while Ohio has never embraced the common-law joint tenancy with its *incidental* right of survivorship, it is well established that "parties may * * * contract for a joint ownership with the right of survivorship." *Hutchison* at paragraph two of the syllabus; *Shelton* at ¶ 18. If "a donor or grantor, by the operative words of the gift or grant, *clearly expresses* an intention to give the right of survivorship, such words will not be disregarded." (Emphasis added.) *Hutchison* at 552. Therefore, "at the death of one of the joint owners the survivor succeeds to

the title to the entire interest, not upon the principle of survivorship, as an incident to the joint tenancy, but by the operative provisions of the contract." *Id.* at paragraph two of the syllabus. *See Lewis v. Baldwin*, 11 Ohio 352, 354 (1842). "This is an *express* right of survivorship." (Emphasis sic.) *Shelton* at ¶ 20.

{¶20} This principle—that a grantor, donor, or testator may expressly provide for rights of survivorship in his grantees, donees, or beneficiaries—serves as the foundation for the "survivorship tenancy," a creation of Ohio statutory law that shares some features with the common-law joint tenancy. Under R.C. 5302.20(A), "if any interest in real property is conveyed or devised to two or more persons for their joint lives and then to the survivor or survivors of them, those persons hold title as survivorship tenants, and the joint interest created is a survivorship tenancy." "Any deed or will containing language that shows a *clear intent* to create a survivorship tenancy shall be liberally construed to do so." (Emphasis added.) R.C. 5302.20(A). If two or more persons take title to real property as survivorship tenants, "each survivorship tenant holds an equal share of the title during their joint lives unless otherwise provided in the instrument creating the survivorship tenancy" and "[u]pon the death of any of them, the title of the decedent vests proportionately in the surviving tenants as survivorship tenants * * * until only one survivorship tenant remains alive, at which time the survivor is fully vested with title to the real property as the sole title holder." R.C. 5302.20(B). Thus,

-17-

the survivorship tenancy resembles the common-law joint tenancy in many important respects. Yet, when it created the survivorship tenancy, the Ohio legislature made clear that the tenancy in common remains the favored form of cotenancy in Ohio. *See* R.C. 5302.19 ("Except as provided in * * * [R.C. 5302.20] * * *, if any interest in real property is conveyed or devised to two or more persons, such persons hold title as tenants in common and the joint interest created is a tenancy in common."). Thus, when real property is conveyed or devised to two or more persons without a clear expression of intent to create a survivorship tenancy, such persons take title to the real property as tenants in common without rights of survivorship. *See Reif v. Reif*, 86 Ohio App.3d 804, 807-808 (2d Dist.1993) ("[A] deed or will creating a survivorship tenancy must include language evidencing a clear intent to create this type of tenancy. * * * In the absence of words of survivorship, property owned by two or more persons is held as a tenancy in common."), citing R.C. 5302.19 and 5302.20.

{¶21} In this case, the survivorship language contained in Item II of Gaskill's will does not evidence a clear intention to create a survivorship tenancy in Williams, Crisp, and Johnson. Instead, even assuming that this language can conceivably be read as expressing an intention to create a survivorship tenancy in Williams, Crisp, and Johnson, it can also be reasonably interpreted as evidencing Gaskill's desire to avoid operation of R.C. 2107.52, one of Ohio's anti-lapse statutes.

{¶22} R.C. 2107.52 is Ohio's anti-lapse statute pertaining to wills.[2] R.C. 2107.52 provides, in relevant part:

> Unless a contrary intent appears in the will, if a devisee fails to survive the testator and is a * * * stepchild of * * * the testator * * * [and] [i]f the devise is not in the form of a class gift and the deceased devisee leaves surviving descendants, a substitute gift is created in the devisee's surviving descendants. The surviving descendants take, per stirpes, the property to which the devisee would have been entitled had the devisee survived the testator.

R.C. 2107.52(B)(2)(a) (Mar. 22, 2012) (current version at R.C. 2107.52(B)(2)(a) (Mar. 22, 2019)). Through R.C. 2107.52, "[t]he legislature presumed that a testator would want the [surviving descendants] of a predeceased relative to inherit the relative's share rather than have the devise lapse." *Belardo v. Belardo*, 187 Ohio App.3d 9, 2010-Ohio-1758, ¶ 15 (8th Dist.). "To overcome this presumption and avoid application of the statute, the will must specifically provide otherwise." *Id.* However, "[t]here are no certain or exact words of survivorship needed to indicate intent to avoid the statute." *Id.* at ¶ 21.

{¶23} Various formulations of survivorship language have been found sufficient to indicate an intent to avoid the anti-lapse statute. For example, one court

---

[2] R.C. 2107.52 is to be distinguished from R.C. 5808.19, Ohio's anti-lapse statute pertaining to trusts.

interpreted a devise to the testator's three children "*if they survive me*, to be theirs in equal shares, share and share alike, and in fee simple" as an adequate expression of intent to avoid application of the anti-lapse statute. (Emphasis sic.) *Rumberg v. Rumberg*, 7th Dist. Mahoning No. 96 CA 156, 1998 WL 896334, *1 (Dec. 16, 1998). Another court held that the "phrase 'members of the Weaver family living at the time of my death' convey[ed] words of survivorship that preclude[d] operation of the Anti-Lapse Statute." *Nurre v. Weaver-Kuhl*, 1st Dist. Hamilton Nos. C-990611 and C-990626, 2000 WL 492055, *4 (Apr. 28, 2000). This court and numerous others have reached identical conclusions from wills employing similar language. *E.g.*, *Knepper v. Hahn*, 3d Dist. Henry No. 7-95-1, 1995 WL 431891, *1-2 (July 21, 1995) ("To my niece, * * * if she survives me. If she should die before my death such share to go to [a second niece]."); *Day v. Brooks*, 10 Ohio Misc. 273, 283-284 (P.C.1967) ("I hereby give and devise to all of my brothers who shall be living at the time of my decease, the sum of Three Hundred Dollars ($300.00) each."). In fact, in one case, the Supreme Court of Ohio found an intention to avoid operation of the anti-lapse statute where the will did not plainly state that the beneficiaries' devises were conditioned on surviving the testator. *Polen*, 92 Ohio St.3d at 564, 567, 569 ("The will directed [the executor] 'to distribute the net proceeds [from the residue of the estate] to [five named

beneficiaries], *equally share and share alike, the same to be theirs absolutely, or to survivors thereof.*'") (Emphasis sic.).[3]

{¶24} Whether the survivorship language in Item II of Gaskill's will adequately expresses an intention to avoid application of the anti-lapse statute is not at issue in this case. Thus, we do not decide whether the survivorship language in Item II is sufficient to escape operation of the anti-lapse statute. Instead, we introduce the above-cited authority merely to illustrate that the survivorship language in Item II of Gaskill's will can be reasonably interpreted as evidencing Gaskill's desire to avoid operation of the anti-lapse statute, rather than as indicating Gaskill's intent to create a survivorship tenancy in Williams, Crisp, and Johnson. In fact, the anti-lapse-statute-avoidance interpretation is perhaps the more natural interpretation because the method of distributing Gaskill's property provided for by the survivorship language is consistent with how one would expect Gaskill's property to be distributed if Williams, Crisp, or Johnson predeceased Gaskill and the anti-lapse statute did not apply. That is, assuming that the anti-lapse statute does not apply to Gaskill's will, if any one or more of Gaskill's stepchildren predeceased Gaskill, leaving one or more of them alive, the share or shares of the predeceasing

---

[3] *Polen* was decided under a former version of R.C. 2107.52. *See* R.C. 2107.52 (Oct. 8, 1992). Under the current version of R.C. 2107.52, "[a]ttaching the word 'surviving' or 'living' to a devise, such as a gift 'to my surviving (or living) children,' is not, in the absence of other language in the will or other evidence to the contrary, a sufficient indication of an intent to negate the application of [R.C. 2107.52(B)]." R.C. 2107.52(C)(1) (Mar. 22, 2019). In light of R.C. 2107.52(C)(1), it may be debatable whether the survivorship language in *Polen* remains a sufficient expression of intent to avoid operation of the anti-lapse statute.

stepchild or stepchildren would have been distributed to the surviving stepchild or between the surviving stepchildren in equal proportion, to the exclusion of the heirs or devisees of the predeceasing stepchild or stepchildren. This is precisely the manner of distribution called for by the survivorship language in Item II of Gaskill's will.

{¶25} Accordingly, although we do not determine whether the survivorship language in Item II is sufficient to express an intention to avoid operation of the anti-lapse statute, we believe that it is susceptible of such an interpretation. Given this second plausible interpretation, we cannot conclude that Item II of Gaskill's will contains language showing a clear intent to create a survivorship tenancy with respect to the real property devised to Williams, Crisp, and Johnson. *See Hutchison*, 120 Ohio St. at 551-552; *Reif*, 86 Ohio App.3d at 807-808; R.C. 5302.20. Therefore, we conclude that Williams, Crisp, and Johnson take title to the real property passing under Gaskill's will as tenants in common. *See* R.C. 5302.19. Likewise, we conclude that Gaskill's will does not give Williams, Crisp, and Johnson rights of survivorship in Gaskill's personal property. As a result, we conclude that the trial court did not err by determining that Johnson received an undivided one-third share of Gaskill's estate, that Johnson's interest was not extinguished by her death, and that Johnson's heirs or devisees are thus entitled to receive her share.

**{¶26}** Williams and Crisp's first and second assignments of error are overruled.

**{¶27}** Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**