### In re GUARDIANSHIP OF MARSH.

[Cite as *In re Guardianship of Marsh,* 178 Ohio App.3d 723, 2008-Ohio-5375.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2007 CA 94.

Decided Oct. 10, 2008.

724

Richard Marsh, appellant, pro se.

J. Andrew Root for appellee John C. Grayson.

Wolff, Presiding Judge.

{¶ 1} Richard Marsh, the son of Clara Marsh, appeals from a judgment of the Greene County Probate Court, which overruled his motion to remove John Grayson as Clara's guardian and overruled his objections to the guardian's inventory report. For the following reasons, the judgment is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

I

{¶ 2} Clara Marsh is the mother of Richard Marsh and Elaine Grayson. Elaine is married to John Grayson.

{¶ 3} On July 26, 2006, John filed an application to be appointed Clara's guardian in the Greene County Probate Court, alleging that Clara was suffering from Alzheimer's disease and dementia. The following day, John requested an order permitting the sale of Clara's condominium, located at 1524 Dee Anne Drive, to proceed to closing. John further asked that 68 percent of the proceeds be held in escrow while 32 percent be distributed to Richard, the co-owner. Following the sale, the court ordered, as agreed by the parties, that Richard be distributed $71,279.07 from the sale of the condominium and that the balance be deposited into an account of Clara Marsh pending further order of the court.

{¶ 4} After an independent mental evaluation of Clara, the probate court held a hearing on John's petition on January 31, 2007. At the hearing, Richard also requested to be appointed Clara's guardian. The court found that both John and Richard were "honorable and descent [sic]" men, and it noted that Clara preferred Richard to be her guardian. The court noted, however, that Richard resided near Cleveland and that John would be in a better position to make immediate health-care decisions for Clara due to the proximity of John's home to Clara's residence. The probate court appointed John as guardian of Clara's person and estate.

{¶ 5} From the record, it is clear that the relationship between Richard and the Graysons has deteriorated since the filing of John's petition and his subsequent appointment as Clara's guardian. In May 2007, Richard objected to the guardian's inventory filed on April 2, 2007. Richard claimed that the inventory improperly included proceeds from the sale of the condominium, which he held jointly with Clara with right of survivorship. Richard also claimed that the inventory failed to include certain personal property of Clara's, including a grandfather clock. In June 2007, Richard moved for John to be removed as guardian and that he be appointed her guardian. Richard claimed that Clara had been unnecessarily placed in a secured nursing home facility and that he had not

been allowed to stay with her per John's instructions. Richard also claimed that he was not provided medical information about his mother.

{¶ 6} After a hearing, the probate court denied the motion to remove John as guardian. The court found that Clara's grandfather clock had been gifted to Elaine and was properly excluded from the inventory, that certain items on the inventory belonged to Richard, and that the proceeds of the sale of the condominium were properly distributed. Richard appeals from this judgment.

{¶ 7} Clara died on March 26, 2008. At that time, Richard had filed his appellant's brief, but John had not yet filed an appellee's brief. Since that time, both parties have addressed the effect of Clara's death on this appeal. We have agreed with the parties that the issues concerning the guardianship and inventory of Clara's estate are not moot and that this appeal should proceed.

{¶ 8} Richard raises three assignments of error, which we will address in an order that facilitates our analysis.

## II

{¶ 9} Richard's first assignment of error states:

{¶ 10} "The trial court erred when it found that the grandfather clock was gifted to Elaine Grayson by an *inter vivos* gift."

{¶ 11} In his first assignment of error, Richard asserts that the trial court erred in finding that Clara's grandfather clock had been gifted to Elaine, because John failed to establish Clara's donative intent and delivery to Elaine. In response, John asserts that this assignment of error is moot, because it is undisputed that Clara intended for Elaine to have the grandfather clock upon her death. Alternatively, John argues that the circumstances surrounding the clock's distribution indicated that Elaine received the clock as an inter vivos gift.

{¶ 12} Beginning with the issue of mootness, the parties agreed throughout the probate court proceeding that Elaine would be entitled to the grandfather clock upon her mother's death based on Clara's will. Both Richard's and John's appellate briefs expressed this purported fact. On June 2, 2008, however, Richard filed a motion to stay this appeal until the Greene County Probate Court determined which of two documents was the last will and testament of Clara Marsh. Richard attached a handwritten will, dated August 19, 2006, that expressed that Clara was leaving "everything" to Richard and his wife. Because Elaine would not receive the grandfather clock under the alleged August 19, 2006 will if it were found to be valid, we find that the issue of ownership of the grandfather clock is not moot.

{¶ 13} "An *inter vivos* gift is an ' "immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another." ' *Helton v. Helton* [ (1996), 114 Ohio App.3d 683, 685, 683 N.E.2d 1157], quoting *Smith v. Shafer* (1993), 89 Ohio App.3d 181, 183, 623 N.E.2d 1261. The essential elements of an *inter vivos* gift are: 1) intent of the donor to make an immediate gift, 2) delivery of the property to the donee, and 3) acceptance of the gift by the donee." *Fricke v. Martin–Fricke* (May 18, 2001), Greene App. No. 00–CA–57, 2001 WL 523946. "Whether the requisite elements of a gift—donative intent, delivery, and acceptance—have been proved is a mixed question of law and fact that must be determined from all the facts and circumstances." *In re Estate of Kenney* (May 13, 1993), Montgomery App. No. 13384, 1993 WL 169113.

{¶ 14} According to Clara's January 7, 2004 will, which John presented at the hearing, Clara stated: "The contents of the condo are for you both to share and to decide whatever you wish to do. The grandfather clock is for Elaine—I hold an insurance policy on it paid yearly. I feel it necessary in a tornado area."

{¶ 15} In January 2006, Clara moved to Elmcroft, an assisted living facility, which provided her a smaller apartment. The record establishes that the family met twice in early 2006 to clean Clara's condominium in preparation for its sale. At those times, the family divided among themselves some of the property that Clara would not be using at her new apartment. The main distribution occurred between March 15 and April 1.

{¶ 16} John testified that there was an auctioneer, identified at Clara's request, who inventoried the personal property. Elaine's daughter, Leslie, took a large amount of "garage sale-type stuff." Elaine and John took the grandfather clock, and it is now in their home. Richard testified that his daughter received Clara's dining-room set from the condominium and that she now has it. The residual items were sold at auction for $3,500. Neither the dining room set nor the grandfather clock were listed in the April 2007 inventory.

{¶ 17} John testified that Clara was aware that Elaine had the grandfather clock in their home. John stated that Clara "came over to our house on several occasions after that, we showed her where the clock was. She looked at it admiringly and was glad it was working." John stated that Clara complimented him on getting the clock moved, set up, and balanced without the aid of a mover.

{¶ 18} Based on the testimony, we conclude that the probate court properly determined that Elaine had received the grandfather clock by a valid inter vivos gift. Although Clara had originally intended that the grandfather clock and her other possessions in the condominium should be dispersed upon her death, the evidence established that Clara was aware of and approved of the distribution of personal property in her condominium upon her move to Elmcroft. Although Clara did not personally deliver the items to various family members, Clara's

statements to John expressed her approval that Elaine and John had the grandfather clock at their home. There is no evidence that Clara intended to retain an ownership interest in the clock after its removal from the condominium.

{¶ 19} The first assignment of error is overruled.

### III

{¶ 20} Richard's third assignment of error states:

{¶ 21} "The trial court erred when it failed to distribute one-half of the sale proceeds from the property to Richard Marsh as the survivorship tenant."

{¶ 22} Richard asserts that the probate court erred in determining that the $102,424.82 placed in a Merrill Lynch account, representing Clara's proceeds from the sale of the condominium, belonged to Clara and that Richard had no interest in those funds.

{¶ 23} In June 2003, Richard and Clara purchased a condominium located at 1524 Dee Anne Drive in Xenia, Ohio, for approximately $165,000. Richard contributed $56,750 toward the purchase of the condominium and Clara contributed $114,831. Soon after the purchase, Clara and Richard executed a quit-claim deed, rendering them joint tenants with right of survivorship. In August 2006, Clara and Richard sold the property for $175,000. The total sale proceeds amounted to $173,703.89. Richard received $71,279.07, and the balance ($102,-424.82) was ultimately placed into Clara's Merrill Lynch account.

{¶ 24} Richard's arguments regarding his entitlement to Clara's proceeds from the sale of the condominium have evolved during the course of this action.

{¶ 25} In August 2006, prior to the appointment of a guardian, the court oversaw the sale of 1524 Dee Anne Drive. On August 17, 2006, the court, by agreement of the parties, ordered distribution of $71,279.07 to Richard and the balance to an account for Clara, to be held pending further order of the court. After receiving the April 2007 inventory, Richard objected, in part on the ground that the inventory "included certain funds in the form of proceeds of sale of real estate which he held jointly with the right of survivorship with the Ward." At the hearing, Richard argued that Clara's proceeds from the sale of the condominium should have been placed in a Neuberger Berman joint-survivorship investment account. Richard argued then that Clara intended for him to have the condominium upon her death and, therefore, he had a continued survivorship interest in the proceeds from the sale. Richard did not assert during that hearing that he was entitled to an additional $15,572.88 of the proceeds as a 50 percent owner of the property.

{¶ 26} In his memorandum in support of his objections, which was filed after the hearing, Richard first asserted that he was entitled to an additional $15,572.88 as a joint owner with an equal right to the property. Richard continued to assert that Clara's proceeds should also be placed in a joint-survivorship investment account.

{¶ 27} On appeal, Richard contends that he should have received 50 percent of the sale proceeds. He argues that the deed rendered him a survivorship tenant and that the deed failed to negate the presumption that he and Clara owned the property equally. Richard asserts that he is entitled to $15,572.88, so that both he and Clara would receive $86,851.95. Richard no longer argues that Clara's proceeds from the sale of the condominium should have been placed in a survivorship investment fund. (Although Richard has apparently abandoned his argument that Clara's proceeds should have been placed in a survivorship investment account, we would have agreed with the probate court that this argument lacked merit. A survivorship tenancy may exist only in real property, and it does not extend to sale proceeds. *Reif v. Reif* (1993), 86 Ohio App.3d 804, 808–809, 621 N.E.2d 1279. Accordingly, Richard's survivorship interest in the condominium terminated with its sale.)

{¶ 28} In response, John argues that the court properly approved the inclusion of $102,424.82 in the inventory as Clara's property. John asserts that the probate court was not bound by the form of the deed and that it properly considered the proportional investments of the parties. John states that Richard received a larger percentage of proceeds than he had contributed to the purchase and that Richard is not entitled to a greater share of the proceeds.

{¶ 29} R.C. 5302.20 sets forth the requirements to create a survivorship tenancy. R.C. 5302.20(B) provides: "If two or more persons hold an interest in the title to real property as survivorship tenants, each survivorship tenant holds an *equal share* of the title during their joint lives unless otherwise provided in the instrument creating the survivorship tenancy." (Emphasis added.) See also R.C. 5302.20(C)(4) (stating that the enforcement of a lien against a survivorship tenant results in the conversion of a survivorship tenancy to the tenancy in common with each tenant in common being "equal unless otherwise provided in the instrument creating the survivorship tenancy").

{¶ 30} In this case, the probate court found that Clara "contributed $102,424.00 to the purchase of [the condominium], and she is entitled to same free and clear of any claim of Richard Marsh. * * * Each party received his or her apportioned share and neither party has a lien or hold on the others['] property."

{¶ 31} Although the probate court's determination can be considered a fair result, we find that the present circumstances are governed by R.C. 5302.20.

The quit-claim deed between Richard and Clara created a survivorship tenancy. Nothing in the deed indicated that Richard's and Clara's ownership would be based on their proportional contributions toward the purchase price. Thus, as joint tenants with right of survivorship, Richard and Clara were equal owners of the condominium. See *Burge v. Preuss,* Athens App. No. 04CA35, 2005-Ohio-1054, 2005 WL 567310 (noting that execution of valid survivorship deed makes then-unmarried couple equal owners of property). As noted by the Ninth District, "[h]ad the legislature intended to make joint and survivorship ownership that of a separate, proportional share of the ownership interest, it could have used such language." *West v. West* (Mar. 13, 2002), Wayne App. No. 01CA45, 2002 WL 388845, at fn. 2. Consequently, when the real estate was sold, Richard was entitled to an equal share of the proceeds.

{¶ 32} This result seems to comport with Clara's intent when creating the survivorship tenancy. As Clara wrote on January 7, 2004:

{¶ 33} "I am sure you know that if it were not for Richard I would not be in this Condominium today. He wanted it for me as much as I and he did all he could do to get it. I am most grateful. Richard and I own this house equally. There is a recorded document (a survivorship deed) that leaves the condo to Richard at my demise. It is only right that I do this for him. He has done everything he could (physically and financially) because he wanted this move as much as I. I sincerely hope that this will not cause any friction between my children."

{¶ 34} John asserts that we may—and should—look past the survivorship deed in this instance. John notes that courts have stated in the context of domestic-relations cases that the court is not bound by the title in determining marital and separate property. E.g., *Williams–Booker v. Booker,* Montgomery App. Nos. 21752 and 21767, 2007-Ohio-4717, 2007 WL 2685057, at ¶ 23, citing R.C. 3105.171(H). Several cases discussing partitions have also stated that when the ownership interest is not stated in the deed, the parties are presumed to have equal interests, but this interest may be rebutted with evidence that the parties contributed unequally to the purchase of the property. We note, however, that these cases generally have been applied where the property is held as tenants in common. See *Bryan v. Looker* (1994), 94 Ohio App.3d 228, 640 N.E.2d 590. We find each of these situations distinguishable and find no basis for applying these principles in this case.

{¶ 35} The third assignment of error is sustained.

IV

{¶ 36} Richard's second assignment of error states:

{¶ 37} "The trial court erred when it failed to remove John Grayson as the guardian and appoint an independent guardian to serve the best interest of Clara Marsh."

{¶ 38} In his second assignment of error, Richard contends that John should have been removed as guardian and an independent guardian appointed, because John "neglected his duty by putting his bias and ill-will against Richard Marsh ahead of the best interests of Clara Marsh." Richard claims that John failed to provide him detailed medical and financial information regarding Clara, that John directed Elmcroft to change the locks on Clara's apartment so that Richard could not spend the night with her, that John failed to include the grandfather clock on the guardian's inventory, and that there was open hostility and lack of communication between Richard and the Grayson family. Richard cites *In re Guardianship of Simmons,* Wood App. No. WD–02–039, 2003-Ohio-5416, 2003 WL 22319415, to support his contention that an independent guardian was necessary.

{¶ 39} Under R.C. 2109.24, the probate court may remove a fiduciary, such as a guardian, due to the fiduciary's failure to file an inventory. The court may also remove a fiduciary "for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, testamentary trust, or estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law." Id.

{¶ 40} A probate court's decision regarding the removal of guardians will not be reversed absent an abuse of discretion. See *In re Estate of Shaw,* Greene App. No. 2004 CA 111, 2005-Ohio-4743, 2005 WL 2179300, at ¶ 18. An abuse of discretion implies more than an error of law or judgment, but rather, suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. "The probate court, as a trier of fact, has the discretion to determine what weight will be afforded to the evidence, and a presumption exists that the findings of the trier of fact are correct." *In re Guardianship of Worth* (June 20, 1997), Darke App. No. 1430, 1997 WL 335559, *5.

{¶ 41} It is well established that a guardianship ends with the death of the ward. *Simpson v. Holmes* (1922), 106 Ohio St. 437, 439, 140 N.E. 395. Upon the ward's death, the "sole duty [of the guardian] is to render an account of his stewardship up to the date of his ward's death." Id. at 439, 140 N.E. 395; see *State ex rel. Hards v. Klammer,* 110 Ohio St.3d 104, 2006-Ohio-3670, 850 N.E.2d 1197, at ¶ 12 ("[A] guardian has the power after the ward's death to make a proper accounting and settlement of any acts taken in regard to the ward's assets"); *Swift v. Gray,* Trumbull App. No. 2007–T–96, 2008-Ohio-2321, 2008 WL 2045018, ¶ 49–50.

{¶ 42} Initially, we note that most of Richard's bases for replacing the guardian are no longer relevant. Because Clara is deceased, Richard's concerns about communication with the guardian regarding Clara's medical and financial condition and visitation issues—in other words, the guardianship of Clara's person—are now moot.

{¶ 43} The only remaining issue is Richard's concern that John's inventory report was unsatisfactory. Because John has the responsibility to file a final accounting after Clara's death, we consider whether the probate court erred in refusing to replace John as guardian of Clara's estate.

{¶ 44} John filed his first inventory report—the accounting challenged by Richard—on April 2, 2007. The inventory listed four assets: (1) jewelry consisting of a gold bracelet and a two-ring wedding set, (2) a Merrill Lynch account totaling $163,160.68, (3) a Fifth Third Bank checking account with $369.57, and (4) Elmcroft apartment furnishings, consisting of furniture, costume jewelry, and clothes, valued at approximately $5,000. John reported Clara's income from Social Security as $16,476.

{¶ 45} In objecting to the inventory, Richard argued that it failed to include the grandfather clock, that the apartment furnishings included items that belonged to him, and that proceeds from the sale of the condominium were improperly placed in the Merrill Lynch account rather than an account with right of survivorship to Richard. At the September 10, 2007 hearing, Richard presented evidence that a television set, a box spring and mattress, and several other items belonged to him. Richard also presented evidence that he and his mother owned the condominium with right of survivorship. Richard's and Clara's contributions toward the purchase of the condominium were undisputed. The probate court agreed with Richard that he owned some of the apartment furnishings, but the probate court otherwise overruled Richard's objections to the inventory.

{¶ 46} As discussed above, we have already determined that the probate court did not err in its rulings regarding the grandfather clock. Although we agree with Richard that he is entitled to an additional $15,572.88 from the sale proceeds, we note that the $102,424.82 in the Merrill Lynch account was placed in an account of Clara's pursuant to an August 2006 order of the probate court. We find no fault with John's inclusion of the entire amount in the inventory, and we see no evidence that John has mismanaged Clara's accounts. Accordingly, we find no basis for removing John as guardian due to the making and filing of the guardian's inventory. The probate court did not abuse its discretion when it failed to remove John as guardian of Clara's estate.

{¶ 47} The second assignment of error is overruled.

V

{¶ 48} The judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FAIN and DONOVAN, JJ., concur.