[Cite as *Clark v. Beyoglides*, 2021-Ohio-4588.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| MICHAEL E. CLARK, et al. | : | |
| | : | |
| Plaintiffs-Appellees | : | Appellate Case No. 29222 |
| | : | |
| v. | : | Trial Court Case No. 2020-MSC-00225 |
| | : | |
| HARRY G. BEYOGLIDES, JR., et al. | : | (Appeal from Probate Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of December, 2021.

. . . . . . . . . . .

WILLIAM H. MACBETH, Atty. Reg. No. 0014769, 401 East Stroop Road, Kettering, Ohio 45429
 Attorney for Plaintiffs-Appellees

HARRY G. BEYOGLIDES, JR., Atty. Reg. No. 0018959, 130 West Second Street, Suite 1622, Dayton, Ohio 45402
 Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant/Appellant Harry Beyoglides, Jr., Administrator of the Estate of Thomas Sears, appeals from a summary judgment rendered in favor of Plaintiffs/Appellees Michael Clark, Ashley Clark, Madison Clark, Kimberly Boedecker, Stephen Boedecker, Shaun Boedecker, and Megan Boedecker (collectively, "Appellees"). In a single assignment of error, Beyoglides contends that the probate court erred in granting summary judgment because it failed to accord due weight to his affirmative defense of laches.

**{¶ 2}** After considering the record and applicable law, we find the assignment of error without merit. Accordingly, the judgment of the probate court will be affirmed.

## I.   Facts and Course of Proceedings

**{¶ 3}** There is little, if any, dispute concerning the facts of this case. *See* Administrator's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (May 24, 2021), p. 1.

**{¶ 4}** On December 19, 2014, Thomas Sears died intestate, and on April 1, 2015, an estate was opened in Montgomery County Probate Court with a case designation of 2015EST00510. Beyoglides was appointed administrator of the estate on April 13, 2015. Affidavit in Support of Defendant Administrator's Memorandum in Opposition (May 24, 2021) ("Beyoglides Affidavit"), ¶ 1.

**{¶ 5}** Sears's next of kin were his niece, Kimberly Boedecker, and his nephew, Michael Clark. Their children (the remaining Appellees) would be the succeeding next of kin and would inherit the estate's assets in the event of a disclaimer by Kimberly and

Michael.

{¶ 6} On July 31, 2015, Beyoglides filed an inventory and schedule of assets, and he served them on Kimberly and Michael by ordinary mail on August 4, 2015. Beyoglides Affidavit at ¶ 2. Neither party filed exceptions to the inventory, nor did they disclaim any interest in any estate asset. *Id.* According to the inventory, the following assets existed: $13,783.36 in intangible assets and two parcels of real estate located at 3317 North Main Street in Dayton, Ohio. The real estate was valued at $26,540, for a total estate value of $40,323.36. *Estate of Thomas I. Sears*, Montgomery P.C. No. 2015EST00510, Inventory and Appraisal (July 31, 2015).[1]

{¶ 7} On February 12, 2016, Beyoglides filed a partial account for the estate and sent a copy to Kimberly and Michael. A second and partial account was filed on March 29, 2017, and was again sent to these parties. In that account, Beyoglides indicated that "[t]here is distressed real estate remaining as well as three potential debts," and that "[t]he real estate has been condemned by the City of Dayton." Status Report (Mar. 29, 2017), p. 1.

{¶ 8} Beyoglides filed a third partial account on July 24, 2018, and again served Kimberly and Michael. On the same day, Beyoglides filed an application for a certificate of transfer to Kimberly and Michael each of an undivided one-half interest in each parcel of land. The probate court issued a transfer certificate that day, and the certificate was sent to the parties. The certificate was recorded on August 9, 2018, and the property,

---

[1] We have consulted the online docket for the estate case. Under well-recognized law, we may take judicial notice of public records and judicial opinions that can be accessed via the internet. *E.g., True Care Early Learning Ctr. v. Ohio Dept. of Job & Family Servs.*, 2020-Ohio-954, 152 N.E.3d 1017, ¶ 24, fn.5 (2d Dist.).

therefore, was transferred to Kimberly and Michael.

{¶ 9} When the certificate of transfer was granted, the inventory showed that real property in the amount of $29,540 had been transferred and that $7,826.19 remained in the administrator's hands. Neither Kimberly nor Michael filed exceptions to the inventory, and on September 18, 2018, the probate court filed an entry approving the third partial inventory.

{¶ 10} However, on September 19, 2018, Kimberly and Michael filed disclaimers with the probate court, disclaiming any interest in the property. The remaining Appellees filed disclaimers in December 2018. The disclaimers were also recorded.

{¶ 11} On August 9, 2020, Appellees filed the current action against Beyoglides as well as the Montgomery County Recorder and Montgomery County Auditor. In the complaint, Appellees alleged that the real property in question was in poor condition, had not been occupied for years, and had been condemned, but had not been demolished by the City of Dayton ("City"). The complaint further stated that Appellees had complied with all relevant requirements for disclaimer, but the City had refused to acknowledge the disclaimers' effect and had issued nuisance abatement notices to Kimberly and Michael. In addition, the complaint alleged that the property was still listed with the Montgomery County Treasurer as being owned by Michael Clark, et al., and that the Auditor's representatives claimed they could do nothing without a court order.

{¶ 12} Beyoglides filed an answer on August 17, 2020, and an amended answer on September 22, 2020. In the meantime, the Auditor and Recorder filed answers on August 20, 2020. In their answers, the Auditor and Recorder stated that they were not opposed to a court order directing them to take certain action, provided that any order

complied with the statutory duties and provisions applying to these officers.

{¶ 13} After several pre-trials, the probate court established a summary judgment deadline for May 3, 2021. Appellees then filed a motion for summary judgment on May 2, 2021, and Beyoglides responded to the motion on May 24, 2021. As indicated, Beyoglides did not challenge the facts; instead, he argued that Appellees' claims were barred by laches. On July 7, 2021, the court granted summary judgment in favor of Appellees and included a Civ.R. 54(B) certification, finding no just reason for delay.

## II. Propriety of Grant of Summary Judgment

{¶ 14} Beyoglides's sole assignment of error states that:

The Trial Court Erred in Granting the Plaintiff's Motion for Summary Judgment When It Failed to Give the Proper Weight to the Defendant's Affirmative Defense of Laches.

{¶ 15} Under this assignment of error, Beyoglides admits that Appellees' disclaimers conformed with statutory requirements under R.C. 5815.36. He also states that, to his knowledge, Appellees had done nothing to invalidate their disclaimers under the statute. However, Beyoglides argues that a certificate of transfer is not a "donative instrument" as required by R.C. 5815.36(B)(3)(a) for a disclaimer. Beyoglides further contends that he should have prevailed on his laches defense because all the elements of laches were satisfied, or at least genuine issues of material fact existed in that regard.

{¶ 16} In responding, Appellees note that Beyoglides failed to raise any issue about a "donative instrument" in the probate court. Appellees also argue that they were not guilty of laches. Rather, the record indicates that Beyoglides failed to show material

prejudice because he would be in the same position of having to continue to administer the estate even if disclaimers were filed at the beginning of the estate case.

{¶ 17} In discussing the issues, we will first discuss applicable review standards. We will then consider Beyoglides's argument about disclaimer under R.C. 5815.36. Finally, we will evaluate the laches claim.

## A. Standards of Review

{¶ 18} As noted, the probate court granted summary judgment to Appellees. The law is well-settled that in reviewing summary judgment decisions, we conduct de novo review, "which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). "Summary judgment is appropriate if (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶ 19} In de novo review, we independently review a trial court's decision and accord it no deference. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997). With these standards in mind, we will consider R.C. 5815.36's treatment of donative instruments.

## B.   Discussion of R.C. 5815.36

{¶ 20} Beyoglides contends that a certificate of transfer is not a "donative instrument" as required by R.C. 5815.36(B)(3)(a) for an effective disclaimer of a property interest.   Because Beyoglides failed to raise this issue below, we review only for plain error.   *E.g.*, *Whitaker v. Paru Selvam, L.L.C.*, 2d Dist. Montgomery No. 26103, 2014-Ohio-3263, ¶ 48.   In civil cases, "the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."   *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶ 21} R.C. 5815.36 covers disclaimers of succession to property interests and includes both real and personal property.   R.C. 5815.36(A)(3).   As relevant here, R.C. 5815.36(B)(1) provides that:

> A disclaimant * * * may disclaim, in whole or in part, the succession
> to any property by executing and by delivering, filing, or recording a written
> disclaimer instrument in the manner provided in this section.

{¶ 22} A disclaimant is defined as "any person * * * who is any of the following: (a) with respect to * * * intestate succession, an heir, next of kin, devisee, legatee, [or] person succeeding to a disclaimed interest, * * * [or] (d) [a]ny person entitled to take an interest in property upon the death of a person or upon the occurrence of any other event."   R.C. 5185.36(A)(1)(a) and (d).   Under this definition, Kimberly and Michael were disclaimants, and once they had disclaimed, those persons succeeding to their interest (the remaining

Appellees) were also disclaimants.

{¶ 23} R.C. 5815.36(B)(3) provides the following requirements for disclaimers:

The written instrument of disclaimer shall be signed and acknowledged by the disclaimant and shall contain all of the following:

(a) A reference to the donative instrument;

(b) A description of the property, part of property, or interest disclaimed, and of any fiduciary right, power, privilege, or immunity disclaimed;

(c) A declaration of the disclaimer and its extent.

{¶ 24} R.C. 5815.36 does not define a "donative instrument." In its decision, the probate court stated that it is "unclear as to what 'donative instrument' may be involved in an intestate administration." Entry Granting Plaintiff's Motion for Summary Judgment ("Decision") (July 7, 2021), p. 12. We agree that this term lacks clarity, because intestate succession arises by operation of law, not through a testamentary document.

{¶ 25} "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory interpretation." *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 96, 573 N.E.2d 77 (1991), citing *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 190, 404 N.E.2d 159 (1980). "However, where a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent." *Id.*

{¶ 26} "The primary rule in statutory construction is to give effect to the legislature's intention." *Cline* at 97, citing *Carter v. Div. of Water, City of Youngstown*, 146 Ohio St.

203, 65 N.E.2d 63 (1946), paragraph one of the syllabus   "If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters: (A) The object sought to be attained; (B) The circumstances under which the statute was enacted; (C) The legislative history; (D) The common law or former statutory provisions, including laws upon the same or similar subjects; (E) The consequences of a particular construction; [and] (F) The administrative construction of the statute."   R.C. 1.49.

{¶ 27} Before considering legislative intent, we will first discuss the probate court's decision and some general background of intestate transfers.

### 1.   Intestate Situations

{¶ 28} In discussing R.C. 5815.36(B)(3), the probate court noted that while Appellees had referred to the Certificate of Transfer in their disclaimers, a certificate of transfer "is not a conveyance but constitutes a memorialization by the probate court that legal title has transferred from a decedent to a beneficiary."   Decision at p. 12.   The court also stressed the settled legal principle that " 'in intestate estates, where heirs take by way of inheritance, they take title to the real estate immediately upon the death of the intestate."   *Id.*, quoting *Winters Nat. Bank & Tr. Co. v. Riffe*, 2 Ohio St.2d 72, 76, 206 N.E.2d 212 (1965).

{¶ 29} The probate court acknowledged that this latter principle is binding. Nonetheless, the court found that, in effect, this is a legal fiction because heirs may be divested of their interest if an estate's assets must be sold to satisfy debts and claims. *Id.*, citing R.C. 2127.02 and *Nolan v. Kroll*, 37 Ohio App. 350, 174 N.E. 750 (6th Dist.1930).   The court, therefore, rejected Beyoglides's claim that Appellees could not

disclaim the real estate because, under the common law, title had already passed to them. *Id.* at p. 13. Furthermore, the court felt the legislature must have intended to abrogate the common law principle because, otherwise, R.C. 5815.36 would be rendered meaningless. Finally, the court found that if a transfer certificate is considered a donative instrument, Appellees could not have disclaimed their interest until Beyoglides actually filed the certificate. This is because (given the nature of Appellees' intestate interest), they otherwise could not have complied with R.C. 5815.36(B)(3)'s requirement that written disclaimers refer to donative instruments. *Id.* at p. 12.

{¶ 30} In situations "where a decedent fails to dispose of some or all of his or her property through a testamentary transfer, the statute of descent and distribution, R.C. 2105.06, governs who receives the unaccounted-for property." (Citations omitted.) *Stevens v. Radey,* 117 Ohio St.3d 65, 2008-Ohio-291, 881 N.E.2d 855, ¶ 7. Because Thomas Sears died intestate, his property, therefore, passed as required by R.C. 2105.06, to his niece, Kimberly, and his nephew, Michael.

{¶ 31} The probate court correctly stated that where intestate succession is involved, title to real property passes at the time of the decedent's death. As an example, in *Winters,* the court stated that heirs who inherited real property would be entitled to rents on the property from the date of death. *Winters,* 2 Ohio St.2d at 76, 206 N.E.2d 212. *See also U.S. Bank Natl. Assn. v. Swartz,* 2019-Ohio-2021, 136 N.E.3d 879, ¶ 19-26 (10th Dist.) (concluding that a mechanic's lien could potentially be enforced against an estate where an heir contracted for repairs before the decedent's estate had been opened. This was because the property passed by intestate transfer to the heirs at the time of the decedent's death). Likewise, in *Hurton v. Boyer,* 11th Dist. Trumbull No.

2019-T-0086, 2020-Ohio-2790, a plaintiff was entitled to enforce a lease that he signed in his individual capacity because the real property had passed to him at the decedent's death. *Id.* at ¶ 46.

{¶ 32} In *Hurton*, the court focused on the language in R.C. 2113.61(A)(1), which governs transfer certificates and states that, " '*[w]hen real property passes by the laws of intestate succession* or under a will, the administrator or executor shall file in probate court, at any time after the filing of an inventory that includes the real property but prior to the filing of the administrator's or executor's final account, an application requesting the court to issue a certificate of transfer as to the real property.' " (Emphasis sic.) *Id.* at ¶ 42. The court found that this emphasized language "indicates that a certificate of transfer is not a conveyance but constitutes a memorialization by the probate court of what occurred with respect to a real estate title upon the decedent's death." *Id.* at ¶ 44, citing *Platt v. Estate of Petrosky*, 2d Dist. Greene No. 91-CA-105, 1992 WL 172161, *1 (July 24, 1992), and *Ohio N. Univ. v. Ramga*, 3d Dist. Auglaize No. 2-88-1, 1990 WL 97651, *4 (July 12, 1990). *Platt* and *Ramga* are the cases the probate court cited here, for the same point. Decision at p. 12.

{¶ 33} Despite the above principles, we agree with the probate court that the issue of title passing is something of a legal convenience. This is because heirs would not actually receive real property if an estate's assets were insufficient to pay creditors; instead, the property would have to be sold (and title would not legally pass).

{¶ 34} Notably, this is true as well in cases involving real property passing by testamentary means, because title to real property in that situation also transfers at the time of death. *E.g., Hackmann v. Dawley*, 105 Ohio App.3d 363, 367, 663 N.E.2d 1342

(10th Dist.1995) ("[t]he real estate of a decedent descends directly to his heirs or devisees, and the administrator or executor, in the absence of testamentary provision, has no right with respect to the real estate until he has ascertained that the personal property is insufficient to pay debts.").

{¶ 35} Accordingly, the idea that title to real property transfers at death is no barrier to disclaimer, since it is subject to divestment. With these thoughts in mind, we will consider the legislative intent relating to R.C. 5815.36(B)(3)(a), beginning with the common law.

## 2. Common Law

{¶ 36} At common law, beneficiaries of wills had the right to renounce bequests, with their motive being immaterial absent fraud or collusion. *Ohio Nat. Bank of Columbus v. Miller*, 41 Ohio Law Abs. 250, 253, 57 N.E.2d 717 (2d Dist.1943). *See also Bebout v. Quick*, 81 Ohio St. 196, 201, 90 N.E. 162 (1909). As a general rule, courts relied on one of the following theories, which are similar: (1) acceptance of bequests is presumed and renunciation dates back to the time of death; (2) bequests do not vest until a beneficiary accepts, upon which acceptance dates back to the death: or (3) bequests vest upon death, subject to renunciation. *Miller* at 255. In all these situations, the beneficiary's renunciation dates back to when the will became effective (the date of death). *Id.*

{¶ 37} However, "[a] testate succession is one which depends at least in part on the provisions of a will. An intestate succession is one which depends entirely from the provisions of the law alone." *Bauman v. Hogue*, 160 Ohio St. 296, 300, 116 N.E.2d 439

(1953). Consistent with this point, a probate court observed (without actually citing the supporting cases) that:

> By contrast to the testacy rejection doctrine, an opposite line of cases has held that a beneficiary cannot reject rights conferred on him by operation of law. Where property has passed by intestacy, a disclaimer has been said not to be effective to deflect the property rights devolving by the statute of descent and distribution.
>
> Ohio does not appear to have dealt with this intestacy distinction except inferentially when combined with a renunciation of testamentary succession.

*In re Krakoff's Estate*, 87 Ohio Law Abs. 387, 179 N.E.2d 566 (P.C.1961).

{¶ 38} As noted, *Krakoff's Estate* did not cite any of the "line of cases" that it referenced. We did not find such a line of cases in Ohio. Nonetheless, we also failed to discover authority disputing what was said in *Krakoff's Estate*.

{¶ 39} Furthermore, we did not find specific applications of renunciation or disclaimer in intestate situations. Instead, Ohio cases primarily deal with disclaimer or rejection of bequests and devises. *E.g., Miller*, 1 Ohio Law Abs. at 253, 57 N.E.2d 717 (" 'a beneficiary under a will is not bound to accept a legacy or devise therein provided for, but may disclaim or renounce his right under the will, even where the gift to him is beneficial, provided he has not already accepted it. The motives which prompt a renunciation are immaterial in the absence of fraud or collusion; and the rejection of a gift by a legatee is not equivalent to a conveyance by him for the purpose of defeating creditors.' ").

## 2. Legislative History, Former Statutory Enactments

## and Circumstances of Enactment

{¶ 40} The first legislation we could find regarding disclaimer in intestate succession situations was enacted in 1961. Thus, whether or not disclaimer was allowed at common law for intestate property, it was specifically statutorily allowed in 1961.

{¶ 41} The 1961 statute, R.C. 2105.061, provided that:

"Any competent adult entitled to receive any right, title, or interest in any property through intestate succession as provided by section 2105.06 of the Revised code, may renounce such interest by filing a written statement of renunciation with the probate court within sixty days after notice of the hearing on inventory of the intestate's property has been given as required by section 2115.16 of the Revised Code. Any property renounced pursuant to this section shall be distributed as provided by law as if such competent adult had predeceased such decedent."

*Wolfrum v. Wolfrum*, 2 Ohio St.2d 237, 238, 208 N.E.2d 537 (1965), quoting R.C. 2105.061. *See also* Sub.S.B. No. 522, 129 Ohio Laws 545 (containing the same text).

{¶ 42} This statute did not refer to a "donative instrument." Instead, a party only had to file a written statement with the court and no specific content was required.[2]

---

[2] Another existing statute, R.C. 2113.60, was effective October 1, 1953, and allowed refusal or rejection of testamentary bequests or legacies. Under that statute, "a testamentary legatee was required to renounce his interest, except that it was necessary that he do so within a reasonable time." *Estate of Chamberlin*, 6th Dist. Lucas No. 146852, 1982 WL 6445, *3 (June 11, 1982).

{¶ 43} In 1976, a new statute, R.C. 1331.60, was enacted. The purpose of the law was "to provide for disclaimer of testamentary and nontestimentary succession to real and personal property." Am.Sub.S.B. No. 168, 136 Ohio Laws, Part I, 468.

{¶ 44} This new law included both testate and intestate succession. As pertinent here, a disclaimant was defined as "any person * * * who is any of the following: (a) with respect to testamentary instruments and intestate succession, an heir, next of kin, devisee, legatee, person succeeding to a disclaimed interest; * * * [and] (d) any person entitled to take an interest in property upon the death of a person, or upon the occurrence of any other event." *Id.* at 468-469. Despite intervening amendments, this wording has remained unchanged to the present date. *Compare* current R.C. 5815.36(A)(1)(a) and (d).

{¶ 45} Under the 1976 statute, the method of disclaimer was also outlined, as follows:

(B)(1) A disclaimer * * * may disclaim, in whole or in part, any right, power, privilege, or immunity, by executing and delivering, filing, and recording a written instrument in the manner provided in this section.

* * *

(B)(3) The written instrument of disclaimer shall be signed and acknowledged by the disclaimant and shall contain all of the following:

(a) A reference to the donative instrument;

(b) A description of the property, part of property, or interest disclaimed, and of any fiduciary right, power, privilege, or immunity disclaimed;

(c) A declaration of the disclaimer and its extent.

Am.Sub.S.B. No. 168, 136 Ohio Laws, Part I, at 469.   Again, this wording has remained the same since 1976.   *Compare* current R.C. 5815.36(B)(1) and (3).

{¶ 46} When R.C. 1339.60 was enacted, R.C. 2113.60 and R.C. 2105.061 were not repealed.   However, in 1981, both these latter sections were repealed.   *See* Sub.S.B. No. 317, 138 Ohio Laws, Part I, 1130.   The purpose of that bill, among others, was "to eliminate potential conflicts with the comprehensive disclaimer statute."   *Id.* at 1130.

{¶ 47} It is obvious that the existing statute on intestate succession, R.C. 2105.061, could have created conflicts, because it only required filing of a written document.   In addition, the time requirements in R.C. 2105.061 (filing within 60 days after notice of a hearing on inventory) conflicted with the time constraints in R.C. 1339.60(D) (nine months after the later of two dates, both of which related to when a taker's interest in property was finally ascertained).   *See* Am.Sub.S.B. No. 168, 136 Ohio Laws, Part I, at 470.   The reasons for repeal, therefore, are clear.

{¶ 48} As noted, there have been no relevant intervening changes in the disclaimer statute.   In 1985 and 1986, R.C. 1339.60 was amended, but no substantive changes were made to the relevant parts of the statute.   *See* Sub.S.B. No. 201, 140 Ohio Laws, Part I, 545, effective Apr. 4, 1985, and Am.Sub.S.B. No. 249, 141 Ohio Laws, Part I, 508-534, effective Dec. 17, 1986.   In 1998, R.C. 1339.60 was amended again, as part of adoption of the Ohio Prudent Investors Act of the National Conference of Commissioners on Uniform State Laws.   Sub.H.B. No. 701, 147 Ohio Laws, Part III, 5580.   No substantive changes were made at that time, but R.C. 1339.60 was renumbered and re-

codified as R.C. 1339.68. *Id.* at 5587. The internal designations within the statute, i.e., subsection (A) and (B), and so forth, were unchanged. *Id.*

{¶ 49} R.C. 1339.68 was subsequently amended, but no changes were made to R.C. 1339.68(A) and (B). *See* Am.Sub.H.B. No. 313, 148 Ohio Laws, Part II, 3365, 3371-3372, effective Aug. 29, 2000, and Sub.S.B. No. 345, 149 Ohio Laws, Part IV, 7658, 7659-7760, effective July 23, 2002.

{¶ 50} In 2006, the disclaimer statute was again renumbered and re-codified, as part of the adoption of an Ohio trust code. *See* Sub.H.B. No. 416, 151 Ohio Laws, Part IV, 7420, effective Jan. 1, 2007. This time, R.C. 1339.68 was renumbered and re-codified as R.C. 5815.36, and nothing was changed. *Id.* at 7572-7577.

{¶ 51} Since 2007, R.C. 5815.36 has been amended several times, but no changes have been made to subsections (A) and (B). *See* Sub.H.B. 160, 2008 Ohio Laws 52, effective June 20, 2008; Am.Sub.S.B. 124, 2009 Ohio Laws 17, effective Dec. 28, 2009; and Sub.H.B. 479, 2012 Ohio Laws 201, effective Mar. 27, 2013.

{¶ 52} What little can be gleaned from the legislative history, surrounding circumstances, and prior statutory law indicates that the General Assembly wished to combine and specify procedures for all types of disclaimers, regardless of the method by which a property interest was gained, i.e., either testamentary or by succession. This favors the construction the probate court adopted.

### 3. Consequences of a Particular Construction

{¶ 53} As noted, "consequences of a particular construction" are important in statutory interpretation. R.C. 1.49(E). The real issue here is over use of the phrase

"reference to a donative instrument" in R.C. 5815.36(B)(3)(a). R.C. Chap. 5815 (Fiduciary Law) does not define "donative instrument," nor is it defined elsewhere in the Ohio Revised Code.

{¶ 54} An instrument typically refers to something in writing, such as in R.C. 5815.25(B), which states, when referring to a fiduciary's responsibility and duties, that "[i]f an instrument or other applicable written agreement describes, appoints, or directs a fiduciary to handle only the administrative duties and responsibilities of a trust, that administrative fiduciary shall not have any duties, responsibilities, or liabilities to the trust beneficiaries or to other persons interested in a trust * * *."

{¶ 55} Certainly, a certificate of transfer fills the requirement of a written document. The role of such a document as "donative" is less clear.

{¶ 56} As a general rule, "donative" refers to the elements of a gift, such as whether a donor had "donative intent." *E.g., In re Guardianship of Marsh*, 178 Ohio App.3d 723, 2008-Ohio-5375, 900 N.E.2d 220, ¶ 13 (2d Dist.). For example, a valid inter vivos gift requires "(1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there, and (2) in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion, and control over it." *Bolles v. Toledo Tr. Co.*, 132 Ohio St. 21, 4 N.E.2d 917 (1936), syllabus. *Accord Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 20.

{¶ 57} Unquestionably, a probate court is not a "donor." However, in circumstances like the present, the court, in effect, is stepping into the shoes of the

decedent to effect delivery of the gift to the next of kin. Consequently, while the language in R.C. 5815.36(B)(3)(a) could have been clearer, we are able to reconcile it with an interpretation that meets with apparent legislative intent. After all, the legislature intended to develop a "comprehensive disclaimer statute" dealing with both testate and intestate succession. Sub.S.B. No. 317, 138 Ohio Laws, Part I, at 1130. And, in fact, the law has remained effectively unchanged for around 45 years.

### 4.  Administrative Construction

{¶ 58} The final factor in deciding legislative intent is "administrative construction of the statute." R.C. 1.49. We have been unable to find any administrative construction of R.C. 5815.36 or its predecessors, so this factor is irrelevant.

{¶ 59} In view of the preceding discussion, we find no error, let alone plain error, in the probate court's finding that a certificate of transfer is a donative instrument for purposes of satisfying the requirements of R.C. 5815.36(B)(3)(a). We also agree with the court regarding the effect of a disclaimer, regardless of what the common law held as to the fact that title is taken immediately where intestate property is concerned.

{¶ 60} Under R.C. 5815.36(G):

If a donative instrument expressly provides for the distribution of property, * * * the property * * * or interest disclaimed shall be distributed * * * in accordance with the donative instrument. In the absence of express provisions to the contrary in the donative instrument, the property * * * or interest in property disclaimed * * * shall descend, be distributed, or otherwise be disposed of, and shall be accelerated, in the following manner:

(1) If intestate or testate succession is disclaimed, as if the disclaimant had predeceased the decedent * * *.

{¶ 61} As originally codified, R.C. 1339.60(G) similarly provided that "[u]nless otherwise provided in the donative instrument, the property * * * or interest disclaimed, * * * shall descend, be distributed, or otherwise disposed of in the following manner: (1) if intestate or testate succession is disclaimed, as if the disclaimant had predeceased the decedent." Am.Sub.S.B. No. 168, 136 Ohio Laws, Part I, at 471-472. This part of the statute does not lack clarity, and clearly states that a disclaimer, whether testate or intestate, operates to distinguish any interest or "title" at a point prior to the decedent's death. Consequently, the probate court correctly analyzed the effect of disclaimers.

{¶ 62} With these points in mind, we will now consider whether Appellees were guilty of laches with respect to filing their disclaimers.

## C. Laches

{¶ 63} In the context of laches, the probate court held there was no set time for disclaimer, due to uncertainty about the real estate's value, "the divestible nature of property in estates," and the timing of when a fiduciary records the transfer certificate. Decision at p. 14. The court, therefore, rejected laches.

{¶ 64} According to Beyoglides, Appellees had ample opportunity to assert disclaimer, as they knew about the real estate and had received two accountings. In addition, Appellees gave no reason for their four-year delay, other than the fact that, as

non-Ohio residents, they were unaware of Ohio's "title-popping."[3]   Beyoglides further asserts that knowledge of any injury is imputed to Appellees, and that prejudice exists because administration of estates is supposed to be orderly.   According to Beyoglides, if the probate court's decision is affirmed, administration will proceed indefinitely.

**{¶ 65}** "The elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party."   *State ex rel. Carrier v. Hilliard City Council*, 144 Ohio St.3d 592, 2016-Ohio-155, 45 N.E.3d 1006, ¶ 8, citing *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).   The prejudice must be material.   *Connin v. Bailey*, 15 Ohio St.3d 34, 36, 472 N.E.2d 328 (1984).   "Once a defendant has * * * set forth each of these elements, the burden shifts to the plaintiff to explain away the delay."   *Stevens v. Natl. City Bank*, 45 Ohio St.3d 276, 285, 544 N.E.2d 612 (1989).

**{¶ 66}** We review trial court decisions on laches for abuse of discretion.   *State ex rel. Tech. Construction Specialties, Inc. v. DeWeese*, 155 Ohio St.3d 484, 2018-Ohio-5082, 122 N.E.3d 164, ¶ 16; *In re the Estate of Rife*, 2d Dist. Montgomery No. 26072, 2014-Ohio-3644, ¶ 8.   An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citations omitted.)   *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).   "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary."   *AAAA Ents., Inc. v. River Place Community Urban*

---

[3] Beyoglides does not explain the meaning of this term.   Appellant's Brief at p. 7.   We assume he refers to the act of disclaiming.

*Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 67} After considering the record and applicable law, we agree with the probate court that laches did not preclude Appellees' disclaimer. As originally enacted, the disclaimer statute required disclaimers to be filed or delivered within nine months of the later of two events: the donative instrument's effective date if the taker and her interest were finally ascertained as of that date, or the date when the taker and her interest were finally ascertained. Am.Sub.S.B. No. 168, 136 Ohio Laws, Part I, at 470, enacting former R.C. 1339.60(D). Again, the relevant part of the statute has remained essentially unchanged, although the ninety-day period was eliminated in 2008. *See* Sub.H.B. 160, 2008 Ohio Laws 52.

{¶ 68} The current version of R.C. 5185.36(D) states, as pertinent here, that:

The disclaimant shall deliver, file, or record the disclaimer, or cause the same to be done, prior to accepting any benefits of the disclaimed interest and at any time after the latest of the following dates:

(1) The effective date of the donative instrument if both the taker and the taker's interest in the property are finally ascertained on that date;

(2) The date of the occurrence of the event upon which both the taker and the taker's interest in the property become finally ascertainable * * *.

{¶ 69} In the case before us, the certificates of transfer were recorded on August 9, 2018, and Kimberly and Michael disclaimed their interest on September 19, 2018. The remaining Appellees filed their disclaimers in late December 2018. Nothing indicates

that the timing of any of these filings was unreasonable.

{¶ 70} As to the issue of laches, we agree with the probate court that Appellees' interests were not ascertained until the transfer certificates were filed, and that any delay was not their fault. According to the record in the Sears estate case, Beyoglides filed an application to administer the estate on April 1, 2015.[4] The inventory and appraisal listing the real property was then filed on July 31, 2015. On November 3, 2015, Beyoglides filed a request for an extension of time, indicating that there might be additional guardianship assets. Beyoglides also stated that the heirs wished the fiduciary to sell the real estate, which was boarded up. Application for Extension of Time (Nov. 3, 2015), p. 1. The court then extended the time for filing the account to December 1, 2015. *Id.*

{¶ 71} In January 2016, Beyoglides again asked for an extension of time, citing the same reasons, and an extension was granted. Application for Extension of Time (Jan. 5, 2016). An application to extend administration filed in February 2016 indicated that there was distressed real estate that the heirs wished to have sold; as a result, the court allowed a partial inventory to be filed. Application to Extend Administration (Feb. 26, 2016).

{¶ 72} In subsequent filings, including status reports and partial inventories, Beyoglides represented that additional time was needed to resolve estate issues, including a surcharge action against a prior fiduciary, and selling the real estate. In addition, Beyoglides asked for extensions due to personal illness, out of town travel, and

---

[4] All references in this part of our discussion are to *Estate of Thomas I. Sears*, Montgomery P.C. No. 2015EST00510. As noted, we may take notice of the records, which are online.

his unavailability. *See* Status Report (Feb. 26, 2016); Status Report (March 29, 2017); Application for Extension of Time (March 1, 2018); Application for Extension of Time (May 1, 2018); and Application for Extension of Time (July 2, 2018).

{¶ 73} On July 24, 2018, an application for a certificate of transfer was filed and a certificate was issued. *See* Application for Certificate of Transfer and Entry Issuing Certificate of Transfer (July 24, 2018). In a status report filed the same day, Beyoglides again stated that the surcharge action was still pending. Status Report (July 24, 2018). A subsequent status report in July 2019 indicated that the surcharge action was pending and that the issue of the timeliness of the disclaimers needed to be resolved. Status Report (July 26, 2019). Again, in July 2020, the surcharge action was listed as still pending and the disclaimer issue had not yet been resolved. Status Report (July 26, 2020). As noted, Appellees then filed the current action in August 2020.

{¶ 74} In discussing the facts, the probate court commented that the heirs lacked control over the timing of the fiduciary's actions. The court further stressed that before the certificate of transfer was filed, the heirs understood that the property would be sold and that Beyoglides was still seeking a buyer. Decision at p. 10. Additionally, the court noted that the heirs could not have anticipated a seven-year estate administration or that Beyoglides would fail to pay the property taxes and liens on the land, "thereby imposing liability directly on Michael and Kimberly." *Id.* at p. 11.

{¶ 75} Beyoglides does not dispute these facts, other than to comment in his brief that real estate tax liens are not debts of a debtor's estate and run with the land. Appellant's Brief at p. 6, citing R.C. 2117.10. As a result, Beyoglides argues that he correctly stated in his application for a certificate of transfer that the decedent's known

debts had been paid. Beyoglides therefore contends that any statement otherwise by the probate court would be "misleading and an error." *Id.*

{¶ 76} Under R.C. 2117.06, timely claims against an estate must be presented to an executor or administrator. It is true, as Beyoglides argues, that R.C. 2117.10 has an exception for holders of valid liens "if the same is evidenced by a document admitted to public record * * *." However, we do not read the probate court's statement as implying that Beyoglides was incorrect when he said that known debts had been paid. The court was simply noting that the property taxes had not been paid and that the estate's assets would likely be insufficient, which would impose liability on the next of kin, should disclaimer not be allowed.

{¶ 77} In any event, this discussion is immaterial, as the issue is whether Appellees were guilty of laches. Under the undisputed facts in this case, there was no evidence of unjustifiable delay on Appellees' part, and no reason to preclude disclaimer. Accordingly, the sole assignment of error is overruled.

### III. Conclusion

{¶ 78} Beyoglides's sole assignment of error having been overruled, the judgment of the probate court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

William H. Macbeth
Harry G. Beyoglides, Jr.
Nathaniel Peterson
Hon. David D. Brannon